WATSON v. STATE.

(Division A. Feb. 20, 1933.)

[146 So. 122. No. 30222.]

196

**Currie & Currie,** of Hattiesburg, and **T. B. Davis,** of Columbia, for appellant.

Currie & Currie, of Hattiesburg, for appellant.

200

W. D. Conn, Jr., Assistant Attorney-General, for the state.

Argued orally by **Neill Currie** and **T. B. Davis**, for ap-
pellant and **W. D. Conn, Jr.,** for the state.

**Cook, J.,** delivered the opinion of the court.

The appellant, Mrs. Sallie Watson, alias Mrs. T. C. Watson, alias Mrs. Sallie Oglesby, alias Mrs. Cole Elbert Oglesby, alias Mrs. Sallie Wooten, was indicted on a charge of robbing the Columbia Bank, a banking corporation domiciled at Columbia, in Marion county, Miss., in conjunction with N. A. Dickson and Cole Elbert Oglesby, alias T. C. Watson, alias J. W. Wooten, alias C. Wooten. She was tried at a special term of the circuit court of Marion county, on the theory that she was an accessory before the fact, and was convicted and sentenced to serve a term of ten years in the state penitentiary, and from this conviction and sentence she has appealed to this court.

On account of the fact that the prosecution of the appellant proceeded upon the theory that she was an accessory before the fact, and that it is contended that the evidence tending to connect her with the crime, which is largely circumstantial, is insufficient to warrant its submission to the jury, we deem it necessary to set forth the evidence somewhat at length and in detail.

The Columbia Bank was robbed of about seven thousand four hundred dollars during the noon hour of Monday, January 4, 1932. The robbery was committed by two men. one armed with a shotgun. and the other with a pistol, while a third party waited in a Ford automobile parked near the bank. and, after the robbery was completed. the bandits fled from the scene in this automobile. This automobile was found abandoned at a point about seventeen miles south of Columbia, concealed in undergrowth, some distance west of the highway which runs from Columbia to Bogalusa, La., parallel with, and on the east side of, Pearl river. The territory in which the automobile was hidden and abandoned was sparsely settled, and is largely swampy woodland. This abandoned automobile was identified as being the property

of M. J. Lewis, of Hattiesburg, Miss., and he testified that it was stolen from his garage in the city of Hattiesburg some time during the night of Sunday, January 3, 1932.

There was testimony to the effect that one N. A. Dickson, this appellant, and her husband, T. C. Watson, alias Cole Elbert Oglesby, were well acquainted with each other in an oil boom town in the state of Texas: that these three parties arrived at the Leaf Hotel in Hattiesburg, about forty miles from Columbia, in a Nash straight eight coupe, on December 30, 1931; and that they registered at said hotel on that date, and checked out on Sunday, January 3, 1932. During the time intervening between December 30, 1931, and January 4, 1932, this Nash coupe was seen at Columbia, Miss., and was also seen traveling the Columbia-Bogalusa highway, once with the appellant as the driver and sole occupant. On three of the other occasions, the automobile was occupied by two men, and on one occasion by two men and a woman who were not identified.

After the concealed Ford automobile was discovered in the afternoon following the robbery, the sheriff of the county placed a cordon of guards around all the territory within several miles of the point where it was discovered. These guards were placed on all roads, highways, and passageways leading into this territory. About 10:30 P. M. on the night following the robbery, the appellant was discovered driving alone in the said Nash coupe along the highway leading from Poplarville into the territory near the place where the Ford automobile had been concealed. She was stopped by the guards stationed on this road and informed of the robbery, and of the fact that it was believed that the bandits were surrounded in this lonely territory, and she was warned that it was probably unsafe for her to proceed alone at night into these lonely woods. She replied that she was not going far, and did not think the robbers would bother a lady. Over the protests and warning of these guards,

she proceeded along this highway, and, the suspicion of the guards having been thereby aroused, two of them followed her in a car. After they had proceeded a few miles, these guards drove past her and continued along the highway in front of her car. Shortly thereafter, she turned her car and drove back along the highway to the point where she had first been stopped by the guards. There some inconsequential conversation occurred between her and the guards, and she then proceeded in the direction of Poplarville. Five of these guards, all of whom were regularly deputized by the sheriff, followed shortly thereafter and overtook her about five miles from Poplarville. The officers had some further conversation with her there, and one of them boarded her automobile and rode with her to the corporate limits of Poplarville. There she stopped her automobile and refused to go farther.

The officers then demanded that she open the back or rumble seat compartment of her automobile, which was locked, and told her that, if she did not unlock this compartment, they would deliver her to the sheriff at Poplarville. The reason for this demand, as testified to by these officers, was that they believed that she had picked up these bandits when she drove into the territory surrounded by the deputies, and that she had them concealed in this locked compartment of the automobile. She protested against being delivered to the sheriff, and finally gave them a bunch of keys, none of which would unlock the compartment. The officers then secured a plow point, and with this the appellant, assisted by one of the officers, broke the lock of the compartment. When it was opened, the appellant threw up her hands and exclaimed, "Shoot the robbers!" Nothing was discovered in this compartment except valises which the appellant stated belonged to N. A. Dickson, and contained men's clothing. After this examination of her automobile in the outskirts of Poplarville, she expressed a desire to go

to Hattiesburg, and proceeded in that direction, still under the surveillance of the officers. After she had proceeded some distance, the officers again stopped her and requested that one of their number be permitted to accompany her to Hattiesburg. She consented to this arrangement, and one of the officers rode with her to Hattiesburg, where she registered at the Forrest Hotel. She remained there, under surveillance of the officers, until the following morning, when she was formally arrested by the sheriff on a warrant charging her with participation in the robbery. The Nash automobile and the valises or grips that were therein were seized and searched. The valises were found to contain several suits of men's clothes, some of which contained laundry marks indicating that they were the property of N. A. Dickson. There was also found in the valises a large number of keys, some of them being skeleton keys, and some tools for changing numbers on automobile license tags. The Nash coupe was identified as being the property of N. A. Dickson, who had been previously convicted of the robbery. On the trial of this cause, the said N. A. Dickson and one T. C. Watson, alias C. E. Oglesby, the alleged husband of the appellant, were fully identified as the two active participants in the robbery who entered the bank and consummated the theft of the seven thousand four hundred dollars. Various statements of the appellant made to the officers were admitted in evidence over the objections of the appellant. These will be referred to in connection with the assignment of error based upon the alleged erroneous admission of these statements.

The appellant was indicted at a special term of the circuit court of Marion county, which was regularly called to convene on Monday, February 22, 1932, and continue for two weeks. On Thursday, March 3, 1932, during the second week of said special term, the court issued and signed the following order: "Whereas, in the judgment and opinion of the regular presiding judge of the

circuit court of Marion county, Mississippi, the business of the said circuit court at the February, A. D. 1932 Special Term of said court, which said term of said court is now in session, is such as to require that said term of court be continued and extended into and through the third week thereof, and that it will be advantageous and proper to continue and extend the said term of the said court into and through the third week of said court in order to dispose of the volume of business pending for trial on the docket of said court; Now, therefore, under authority of section 732 of the Mississippi Code of 1930, it is hereby ordered by the undersigned judge of the said circuit court that the present February, A. D. 1932, Special Term of the said Circuit Court of Marion County, Mississippi, which is now in session, be and the same is hereby continued into and through the third week thereof, that is to say, into and through the week beginning Monday, March 7, 1932, and ending Saturday, March 12, A. D. 1932, for the trial and disposition of any and all criminal causes or cases pending for trial on the docket of the said circuit court.''

On Monday, March 7, 1932, the appellant filed objections to being put to trial, which objections denied the existence and jurisdiction of the court, for the reasons, among others, first, that the special term of court which was originally called and convened for two weeks had expired, and that the presiding judge was without statutory authority to extend the term; and, second, that there were no signed minutes of the court showing an order extending said special term. Or, in other words, that the minutes of the special term for Thursday, March 3, Friday, March 4, and Saturday, March 5, 1932, were not then signed by the presiding judge, and, consequently, the said special term of the court had expired by operation of law at midnight, Saturday, March 5, 1932. These objections were overruled, and the action of the court in so doing is assigned as error.

There is no question raised by this appeal as to the legality of the special term of two weeks, but it is contended that section 732, Code 1930, authorizing the extension of court terms in certain cases, applies only to regular terms of court as fixed by law, and has no application to special terms called for a stated term. This Code section reads as follows:

"When the trial or hearing of any case, civil or criminal, has been commenced, and is in progress in any court, and the time for the expiration of the term as prescribed by law shall arrive, the court without any special order entered may proceed with such trial or hearing, and bring it to a conclusion, in the same manner and with the like effect as if the stated term had not expired. And in all cases where, in the judgment of any judge or chancellor, the business of any circuit or chancery court may for any cause make it advantageous, or proper, so to do, such judge or chancellor may continue any term of court then in session by an order entered on the minutes of the court for such time as such judge or chancellor may determine; and all courts, the terms of which may be continued or extended shall possess and may exercise all the powers exercisable by the same at or during the term, or terms, which may have been so continued, or extended."

The provision of this section is that in all cases where, in the judgment of any judge or chancellor, the business of any circuit or chancery court may, for any cause, make it advantageous, or proper, so to do, such judge or chancellor may continue any term of court then in session by an order entered on the minutes of the court for such time as such judge or chancellor may determine. There is nothing in this statute which limits its application to regular terms. It would hardly be contended that the first provision of this statute does not apply to special terms, and does not authorize the court to proceed with the trial of a cause begun during the special

term and bring it to a conclusion after the stated term has expired. The second provision authorizes the continuance of any term of court then in session in all cases, where, in the judgment of the presiding judge or chancellor, the business of the court may, for any cause, make it advantageous, or proper, so to do, and applies as fully to a special term called for a stated time as to a regular term fixed by law. And, when a term of court, regular or special, has been extended for a definite time by proper order entered on the minutes, the extension is not a new term of court, but is a part of the term so extended.

In support of the ground of objection that there were no signed minutes of the special term showing an order extending said term, and therefore the said term expired at midnight, Saturday, March 5, 1932, the appellant offered as a witness the circuit clerk, the custodian of the minutes of the court, and by him identified the minute book, and particularly page 239 thereof, which he identified as the purported minutes of the court for Thursday, March 3, 1932, and as containing an order of the court extending the special term of court for one week. The appellant offered in evidence pages 224 to 243, inclusive, of this minute book, which purported to be the entire minutes of the special term of two weeks, including the minutes of Thursday, March 3, Friday, March 4, and Saturday, March 5, 1932, and the clerk of the court then offered to testify that the minutes of these last-mentioned three days were not signed by the judge. An objection was interposed to this testimony, on the ground that the minutes were the best evidence of the fact. This objection was sustained, and thereupon the appellant again offered and read into the record page 243 of the minutes containing the following recitation: "It is now ordered that court adjourn until Monday morning, March 7th, 1932, at nine o'clock." Under this recitation there was a blank space under which appeared the words "Cir-

cuit Judge,'' but no signature of the judge appeared in the space above these words, or on this page.

The circuit clerk testified that the minutes of Thursday, March 3d, were not signed by the presiding judge, but an objection was sustained to this testimony, as were, also, objections to the testimony of this witness as to whether the minutes of Friday, March 4th, and Saturday, March; 5th, were signed. Conceding for the purpose of this decision that, on account of the sustaining of these objections, the appellant failed to get into the record evidence sufficient to establish the fact as to whether or not the minutes for these dates were signed by the judge, it then becomes material to decide whether it was error to exclude the proposed testimony of the circuit clerk that the presiding judge had not, in fact, signed the minutes at the time of the hearing of these objections. Under the particular facts here involved, it is not a sufficient answer to say that the minute book was before the judge for his inspection, and, in addition, that he could take judicial notice of what appeared thereon, and that the fact may be made to appear to this court by certiorari requiring the production in this court of the minutes involved, as it will be presumed that the minutes were signed before the expiration of the alleged extended term, and would now show the signature of the judge. The material inquiry was whether, after entry on the minute book of the alleged order extending the term, the minutes were signed before the expiration of the time fixed by the original order calling the term of court for the ending thereof, or, in other words, had the special term of court been legally extended by an order entered on the minutes of the special term while ''then in session.''

The minute book of the court which contained the minutes of the special February, 1932, term of the court having been produced in court and identified, and particular pages thereof having been introduced in evidence, it was competent for the clerk, the custodian of the book,

to testify that a particular order, entry or fact, material to the issue, did not appear of record therein. Such testimony was not in any proper sense secondary, as the original source of the witness' information was in evidence, and it was error to deny the appellant the right to produce this testimony and have it made of record in order that the correctness of the action of the court upon the very important and vital issue involved might be determined on appeal.

In order that it may appear that the error of the court in excluding evidence to show that the purported minutes of Thursday, Friday, and Saturday of the second week of the special term were not signed was prejudicial to the rights of appellant, it is necessary to decide whether the failure, if such there were in fact, to sign the minutes after the alleged order was entered on the minute book and before the expiration of the time originally fixed for ending the term, rendered the extension order ineffective.

Section 750 of the Code of 1930 provides that the clerk of the court shall enter the proceedings of the court in the minute book, ''against the next sitting of the court, if practicable, when the same shall be read in open court; and when corrected shall be signed'' by the presiding judge; and that ''on the last day of the term the minutes shall be drawn up, read, and signed on the same day, or before the adjournment of the court.'' The provision of this section that ''on the last day of the term the minutes shall be drawn up, read, and signed . . . before the adjournment of the court'' is mandatory, and requires that the minutes must be drawn up and signed before the expiration of the time fixed by law, or by the order calling a special term shall have expired. In view of the mandatory provision of this statute, there is no right or authority in a presiding judge to sign the minutes of his court after the term has expired by operation of law and is in vacation. The difficulty and usual im-

possibility of proving that the minutes were signed after the expiration of the term, or that an order was entered on the minutes after adjournment of the court, which has existed in other cases decided by this court, and will always be present when it is attempted to show the fact after the order is entered and the minutes signed, did not exist in this case, if, in fact, the minutes of the special term were not signed before the expiration thereof, and were not signed at the time the objections were heard, and the proffered testimony was excluded.

A writing or entry on a book provided for recording the minutes of the proceedings of the courts of this state does not become a part of the court's minutes until such tentative minutes are read and signed by the presiding judge. The only power of a circuit judge or chancellor to extend a term of court, regular or special, is found in section 732, Code 1930, which authorizes the extension of any term of court then in session, by an order entered on the minutes of the court. This necessarily means that the order extending a term of court must be entered on the minutes while the court is still in session, that is, upon minutes signed by the judge before the expiration of the term proposed to be extended. So, in the case at bar, if, in fact, no order extending the term of court was entered on minutes which were signed by the presiding judge before the expiration of the term, as fixed by the original order calling the term, the attempted extension was ineffective, and the term of court ended at midnight of Saturday, March 5, 1932, and the trial of appellant during the following week was a nullity. The prejudicial nature of the error of the court in excluding the testimony of the clerk to the effect that the minutes had not been signed at the time of the hearing of appellant's objections to being placed on trial is therefore apparent, and for this error the judgment of the court below must be reversed.

At the time she was under the surveillance of officers,

during the night following the robbery, and after her formal arrest the following morning, the appellant made contradictory statements as to her purposes and intended destination at the time she fell into the custody of the officers, and over her objection these statements were admitted in evidence. She now contends that it was error to admit these statements for the reasons, first, that they were not freely and voluntarily made; and, second, that she was not warned by the officers that any statements she might make would be used against her, and was not advised of her right to remain silent when questioned by the officers.

The evidence is to the effect that no sort of duress or pressure was brought to bear upon the appellant to induce her to make these statements, but that they were freely and voluntarily made by her. There was nothing in the acts or conduct of the officers while they were in the presence of the appellant that constituted duress. It is argued that the fact that the officers were armed was sufficient to alarm and intimidate her and render the statements made by her in the presence of these armed officers inadmissible. She was fully advised as to the purpose for which these weapons were carried by the officers, and it is apparent from the whole evidence that the appellant was not alarmed or intimidated thereby. But it is said by counsel, in their reply brief, that the failure of the officers to warn the appellant that any statements made by her could and would be used in evidence against her is, "as a matter of law the heart of the legal objection to such statements and admissions." A sufficient answer to this contention is found in the cases of Thomas v. State (Miss.), 124 So. 766, and Jackson v. State (Miss.), 140 So. 683, wherein it was held that statements or admissions made to an officer having the accused in custody are not rendered inadmissible by the failure of the officer to warn him that such statements or confessions might be used against him.

It is further argued that the statements made by the appellant and the contents of the traveling bags were inadmissible, because they were statements made and circumstances arising after the alleged conspiracy to rob the bank had been fully consummated. From this evidence the conclusion was fully justified that, for the purpose of escape and concealment, the common purpose had not been ended, and "'acts or declarations of conspirators are not always excluded because they were done or made after the commission of the crime. If for any reason, as for escape or concealment, the common purpose continues, declarations in furtherance thereof are admissible, although the crime which was the object of the conspiracy has been consummated.' 12 Cyc. 438, i." Osborne v. State, 99 Miss. 410, 55 So. 52, 54.

It is next contended that the search of the automobile which the appellant was driving was unlawful, and therefore it was error to admit in evidence the articles discovered by the search of the automobile and its contents. It is contended by the appellant, and we think correctly admitted by the state, that she was technically under arrest from the time the officers first boarded her automobile on the night following the robbery. But we think that, from the acts and conduct of the appellant on that occasion, the officers had probable cause to suspect and believe that the appellant was guilty of a felony, and therefore her arrest was not unlawful. An officer may, as an incident to a lawful arrest, search the person and effects of the party arrested. Bird v. State, 154 Miss. 493, 122 So. 539. Therefore the evidence secured by the search of the automobile and the contents thereof was lawfully secured and was admissible.

It is next contended that the peremptory instruction requested by the appellant should have been granted. We have set forth herein the main points of the evidence tending to connect the appellant, as an accessory before the fact, with the crime charged, and we think this evi-

dence, together with other facts and incidents shown in evidence, was sufficient to warrant the submission of the cause to the jury.

The appellant next contends that the venue was not shown to be in Marion county, because the proof failed to show where she was at the time of the robbery. There is no merit in this contention. The appellant was prosecuted and convicted on the theory that she was an accessory before the fact to a felony that was consummated in Marion county, and, as such, by virtue of the provisions of section 769, Code 1930, she is deemed and considered a principal, and is indictable and punishable as such, and it is immaterial whether she was in the county at the time the crime was consummated by her co-conspirators. In addition to that fact, section 1186, Code 1930, provides that: ''When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced, prosecuted, or consummated, where prosecution shall be first begun.''

There was no reversible error in the granting or refusal of instructions, and other errors argued in reference to the qualifications of jurors are immaterial, in view of the fact that the judgment of the court must be reversed for the reason already stated herein.

Reversed and remanded.