POORE *v.* STATE.

In Banc. Oct. 11, 1948.

(37 So. (2d) 3); (37 So. (2d) 357)

**W. A. Jones** and **J. A. McFarland, Sr.**, for appellant.

538

**George H. Ethridge**, Assistant Attorney General, for appellee.

544

**Montgomery, J.**

J. W. Poore was convicted in the lower court on a charge of murdering one A. H. Hover and was sentenced to death. From this judgment he appeals.

A. H. Hover was an oil operator, and his business was to drill oil wells and buy and sell leases. He met Poore in a hotel at Middleboro, Kentucky, and Poore represented to him that he, or he and his family, had mineral lands in Mississippi that had not been leased and that the wanted Hover to come down and inspect them with a view to development. They, Hover and Poore, left Middleboro on July 6, 1947, traveling in a cream-colored 1947 Studebaker Commander coupe, that belonged to Hover's son, W. H. Hover. At one or two o'clock a. m., on July 7th, they arrived at the home of Mr. and Mrs. Bud Cooley in Wayne County, Mississippi. Bud Cooley died before the trial. Poore came into the house and asked Cooley to come out and meet a frined. He went out to the car and some conversation ensued in which Mrs. Cooley heard her husband say that there was no unleased land. Three days later, at 4:30 or 5:00 a. m. on July 10th, Poore came to the home of George L. Graham in Laurel, Jones County, Mississippi, carrying in his hand a German Luger pistol. Graham was dressing to go to work, and Poore offered Graham $50 to go with him, not saying where, and Graham refused. He then offered Graham $5 for a screw driver and pliers, but Graham told him he had none. He told Graham not to tell any one that he had been there and left by the back door, and Graham ran through the house and, looking through the front door, saw a cream-colored Studebaker car out front, but saw no one in it.

The badly decomposed body of Hover was found at about 6:00 p. m., on July 10th, about 100 feet from a little cutoff road about three miles northeast of Ovett, Mississippi, leading from Highway 15 to Waynesboro, and at a point about one-fourth miles from where the cutoff road left Highway 15. The body had been covered with pine tops and its discovery was led to by a large flock of buzzards.

On the next day, July 11th, J. W. Poore was seen at a sandwich shop in Laurel eating watermelon. The cream-colored Studebaker was parked across the street.

On July 26th, Poore, under the name of J. W. Powell, sold the dream-colored Studebaker to one Harry Hansen in Omaha, Nebraska, exhibiting to him a bill of sale for the car, executed to J. W. Powell by M. H. Morgan, of Monteagle, Tennessee, dated and sworn to on June 16th before R L. C. Ward, who is a Justice of the Peace at Enterprise, Clarke County, Mississippi. The undisputed evidence shows this bill of sale and the jurat at the justice of the peace thereon were forged by Poore. The transfer of the car from Poore, under the name of Powell, to Hansen was made on the back of this forged bill of sale.

In August, the exact date not being shown, Poore, in company with one Arizona Peyton, spent three nights in Sheffield, Alabama, at the home of Mrs. Willard Stansell, and, while there, was seen to sell a gold watch and chain to a Negro, Rector Garrett, which watch and chain was identified as belonging to and worn by Hover when he left Middleboro, Kentucky in company with Poore.

Poore was arrested at Adrian, Michigan, on September 4, 1947, near the intersection of Beecher and Treat streets and carried to police headquarters by the F. B. I. He requested Wallace R. Moseley, F. B. I. agent, to take him to his home at 739 Caton street to there procure some clothing. On arrival there Moseley saw three traveling bags and examined the contents of each. One of the bags in the posssesion of Poore and identified as the property

of Hover, was disclaimed by Poore, who said it was owned by Arizona Peyton, with whom he was setting up housekeeping. The contents of this bag were examined by Moseley, and it was found to contain some ties, an altimeter, a compass, a shaving kit, an optical lens, and other articles belonging to A. H. Hover and identified as such. Poore took with him two of the three bags, leaving behind the bag belonging to Hover. Ten days later, Lucille Kelly, the daughter of Arizona Peyton, carried Moseley out to 739 Caton Street and delivered to him the Hover bag and its contents, and it was sent to the Mississippi officers by the F. B. I.

The foregoing gives the high lights of the picture presented by the testimony in the record. More detailed statements will be presented regarding the questions raised in the assignment of errors.

The assignment of errors first raises the question of venue. Counsel argues that venue was not proven in the First Judicial District of Jones County, Mississippi, as required by art. 3, Section 26, of the Constitution of the State of Mississippi and the Fourteenth Amendment of the Constituiton of the United States. This contention is not supported by the record. The witness, J. Preston Royals, testified that the place near the little gravel road where the body was found is located in Beat 4 and the "First Judicial District of Jones County". J. K. Kilpatrick testified it was in the "First District of Jones County, Mississippi", and S. W. Young testified it was in the "First District of Jones County, Mississippi". From this it is clearly proven that it is in the First Judicial District of Jones County, and that Jones County is in the State of Mississippi.

It is next argued that the State failed to prove venue by failing to prove where the mortal blow or blows were inflicted or that A. H. Hover died in the First Judicial District of Jones County, as required by Scetions 2419, 2427, 2428, 2429 and 2430 of the 1942 Code.

We consider Section 2419, Code of 1942, the controlling section here. It reads as follows: "The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed. But, if on the trial the evidence make it doubtful in which of several counties, or judicial districts, or justice of the peace districts, in cases before justice of the peace, including that in which the indictment, or affidavit, alleges it, the offense was committed, such doubt shall not avail to procure the acquittal of the defendant."

As above stated, Poore and Hover were at the home of Mr. and Mrs. Bud Cooley in Wayne County, Mississippi, on the morning of July 7th, traveling in the cream-colored Hover Studebaker. This was eight miles from where the body was found. At 4:30 or 4:45 a. m. on July 10th, Hover was at the home of George L. Graham in Laurel, Jones County, Mississippi, with a German Luger in his hand, offering Graham $50 to go with him, $5 for a pair of pliers and a screw driver, and left by the back door, telling Graham to tell no one that he had been there. He came and left in the cream-colored Hover Studebaker. On July 10th, the same day, at 6:00 p. m., Hover's body was found, covered over with tops broken from small pine trees. There had been a tremendous blow on the head, sufficient to divide the skull into four large fragments, only one of which was still attached to the spine and many smaller fragments the size of a "four-bit piece", lying nearby on the ground. The entire skull was broken into fragments extending onto the neck in the back and both sides and across the top. The third and fourth vertebrae of the neck part of the spine were separated. In a statement to Wallace R. Moseley, Poore said he had never driven the cream-colored Studebaker, did not buy it, but that Hover left him at the fork of the roads, and that was the last time he knew anything about him or the Studebaker car. He told Wayne Valentine, the Chief of Police at Laurel, that on the way to Mississippi from Kentucky, they had picked up a man by the

name of Morgan at Birmingham, and that Morgan got out of the car at the crossroads near the Cooley home and waited while he and Hover drove to the Cooley home and then returned to the crossroads, where Hover picked up Morgan and went to get some whiskey, and he got out near the crossroads where he waited at a house, a short distance away, for some four hours, when Morgan returned without Hover, saying he had bought the car from Hover and had carried Hover to Laurel where he caught a bus. This same statement was testified to by the witnesses, Edward Steele and Jeff Montgomery.

It will be seen from the above synopsis of the testimony that Poore's statements bring Hover alive to the crossroads, where he says he last saw him, and where his body was later discovered. By his statement he brings Hover, alive, into the First Judicial District of Jones County, Mississippi to a point about one-quarter mile from where Hover's body was later found.

On Hover's body was found a Masonic ring and cuff link, identified as Hover's. Poore sold Hover's watch to Rector Garrett. When arrested in Adrian, Michigan, he had in his possession Hover's traveling bag, his shaving kit, an altimeter and a compass that belonged to Hover and which Hover used in inspecting oil lands, also an optical lens from Hover's glasses, a pencil with the initials "A.H.H." on it, a tiepin, and other articles all identified as Hover's. He sold the Studebaker car under a forged bill of sale to one Hansen; and the handwriting on the bill of sale, including the signature of the seller, Morgan, and the signature of the justice of the peace appearing thereon as having taken Morgan's affidavit, are shown by the undisputed evidence to have been forged and in the handwriting of J. W. Poore. Poore had in his possession a solid gold fountain pen that had been given Hover by his son as a Christimas present. He tried to get the witnesses, Miller Graham and wife, to swear falsely that he had spent at their house the four

hours, when he was supposed to have been waiting near the crossroads for the return of Hover and Morgan.

The appellant, Poore, after the State rested its case, did not take the stand in his own defense nor did he offer any witnesses in his own behalf.

██ Do these facts support the venue here? We are satisfied they do. The evidence that the skull was broken into fragments and that the third and fourth vertebrae of the neck were separated, establishes that this could not have been done by deceased. The jury was justified in finding that it was done by a criminal agency, and establishing that offense as murder, and that the venue of the crime was in the First Judicial District of Jones County, Mississippi. Capps v. State, 189 Miss. 134, 196 So. 639.

██ Venue may be proven by either direct or circumstantial evidence. Circumstantial evidence has been received in every age of the common law and it may rise so high in the scale of belief as to generate full conviction; when, after due caution, this result is reached, the law authorizes its ministers to act upon it. Where a conviction depends upon the circumstantial evidence, the legal test of its sufficiency for that end is its power to satisfy the understanding and conscience of the jury. It is sufficient if the circumstances produce moral certainty, to the exclusion of every reasonable doubt. McCann v. State, 13 Smedes & M. 471; Browning v. State, 33 Miss. 47; Womack v. State, Miss., 161 So. 747.

Poore's own statement places him last with Hover, alive, at the crossroads near which the body was later found, and which was the First Judicial District of Jones County, Mississippi. ██ The head was bashed into pieces and the neck broken in a manner the deceased could not have inflicted upon himself. Poore showed up with the personal effects and car of the deceased. Consequently, the only reasonable deduction is that Poore murdered Hover in the First Judicial District of Jones County, Mississippi, and there concealed his body under

a covering of pine tops. We think the evidence shows that the murder was committed in the First Judicial District of Jones County, Mississippi, and we also think that the evidence is sufficient to show that the crime was murder. This finding also disposes of the appellant's argument that the corpus delicti was not established by the evidence, and this finding, as to corpus delicti, is based on sufficient evidence in this record aliunde the confession or statement made to the officers by Poore.

It is next urged that the action of the trial judge in requiring the defendant to stand up in the courtroom for identification by the witness Rector Garrett was a violation of Poore's constitutional right to not be forced to give evidence against himself. At the time Poore was asked to stand up in the courtroom, it was for the purpose of affording opportunity to the witness, Rector Garrett, to get a full view of him for purposes of identification. The witnses Garrett did not definitely identify him as being the man who sold him Hover's watch, and thereupon Mr. Arlington Jones, of counsel for the defendant, made this objection: "We object and move that all his testimony be excluded for the reason he cannot identify any man as having sold him the watch and chain", and thereupon the court said: "Objection sustained. Before you can point a man out he must be positively identified as the person." Hence it will be seen that defendant's objection was sustained by the court. No motion to exclude the physical evidence of Poore's standing up for identification was made, and the court committed no error in not excluding it in the absence of a request so to do. Brown et al. v. State, 173 Miss. 542, 158 So. 339, 161 So. 465. We find no merit in this assignment of error. See Journal of Criminal Law and Criminology, Vol. 28, pp. 272 and 273, and cases there cited.

It is next urged that the court erred in admitting in evidence the bag and the articles found therein which were found in Poore's posssesion when he was

arrested in Adrian, Michigan. There is no merit in this contention. The undisputed evidence shows that Poore denied ownership and possession of the bag and stated that it belonged to Arizona Peyton, with whom he was setting up housekeeping. It is also undisputed that Poore invited the witness Moseley into the room at 739 Caton Street, Adrian, Michigan and no search was necessary, for the bag was in full view and open to the eye and hand. ██ ██ The arrest was a lawful one, the examination of the bag was an incident to the arrest, and the incriminating articles were connected with the crime as its fruits. 47 Am. Jur. Sec. 19, p. 515; Davis v. State, 170 Miss. 78, 154 So. 304; Patton v. State, 201 Miss. 410, 29 So. (2d) 96; Bird v. State, 154 Miss. 493, 122 So. 539; Watson v. State, 166 Miss. 194, 146 So. 122.

Three is no merit in the objections made to the various instructions given to the State. As a whole, they correctly announce the principles of law applicable to this case. We find no need to lengthen this opinion by setting them out herein.

██ ██ There was no error in overruling appellant's motion to exclude the State's evidence and discharge him. When the State rested its case, it had, by the evidence, established Poore's guilt beyond a reasonable doubt. It is true the proof rests largely in circumstantial evidence, but this circumstantial evidence was not denied by Poore or any one else. Undenied, it became conclusive proof beyond a reasonable doubt. White v. City of Philadelphia, 197 Miss. 166, 19 So. (2d) 493, 744.

The judgment of the lower court will be affirmed, and Thursday, November 25, 1948, set for the date of execution.

Affirmed.

RESPONSE TO SUGGESTION OF. ERROR.
(37 So. (2d) 357)

**Smith, J.**

In response to the Suggestion of Error, we have re-examined the record and have fully discussed it in conference. We are of the opinion that the Suggestion of Error should be overruled.

However, it has been called to our attention that, by an inadvertence as to the incident of Thanksgiving Day upon the date set for the execution, it was directed to be had on Thanksgiving Day. We now change the date of the execution to Friday, December 3, 1948.

Suggestion of error overruled, and date of execution reset.