BRADY, Justice:
The appellant was indicted by the Harrison County grand jury for attempting to burglarize the Long Beach Drug Company, the property of Gordon Justice of Long Beach, Mississippi, on February IS, 1967. He pled not guilty to the indictment and was tried and convicted of attempted burglary and sentenced to four years in the state penitentiary. From this judgment and sentence this appeal is prosecuted.
Mr. Robert L. Simmons resides at 107 West First Street, Long Beach. He has a wide, deep lot, the eastern boundary of which borders the western boundary of the Long Beach Drug Company property and a medical clinic adjoining the Long Beach Drug Company, there being a common wall between them. On the east end of the lot Mr. Simmons has a private driveway and he permitted the doctor who operates the clinic, and the druggist, Mr. Gordon Justice, to use his driveway in reaching these places of business and in parking their cars on their property. Back of the drugstore there is a one story building used as a storeroom, situated some twenty-five to thirty feet west of the west end of the drugstore. The clinic has a carport on its west end and extends some thirty feet west of the drugstore.
On the night of February IS, 1967, at approximately 10:00 o’clock P.M., Mr. Simmons’ attention was directed to the fact that a car was trespassing on his property and driving over the private driveway. His dog and other dogs were barking. This car drove into the driveway several times, ■ and the second time it entered the driveway Mr. Simmons took his flashlight and went out and shined the light in the face of the driver of the car and held it on him, thinking that thereby he would prevent the driver from perpetrating whatever wrong he had in mind. He saw in the car two men, and when he returned to his home he looked in the telephone book and obtained the police telephone number and wrote it down and put it by his bed. He went to bed, and about 11:30 the neighbors’ dogs and his dog began to bark and he got up and looked out the east window of his house and could see that something was being moved. The light on the side of the drugstore shining toward the west through an opening silhouetted the individuals and he could see what he later realized were shelves which were being moved into position, though at the time they looked like they were parallels (lines or bars). He saw two men; one was stocky and one was tall. He saw that these men were moving the shelves and putting them in position behind the building and as they were justling them around he went and called the police. The police came promptly and in the meantime Mr. Simmons got dressed. As soon as he was dressed and saw flashlights coming around the building he took his flashlight and joined the officers in the search. He was present when the appellant was seen and apprehended as he was crouched behind one of two cars in the back yard of a neighbor’s home adjacent thereto. He identified the appellant as being the man who was apprehended.
The proof shows that the shelves in question were metal shelves approximately five feet in height, and the pictures indicate that there were five of them. The proof further shows that the shelves had been behind the drugstore for some time and that Mr. Justice had verbally given them to Mr. Simmons, who had never picked them up. Pictures taken the following morning show that the shelves were placed by the carport of the clinic so that a *330 person could mount the shelves and catch hold of the top of the carport and go upon the clinic and thus step over the three and a half foot common wall and reach the drugstore. The record discloses that at 2:30 on the afternoon of February 15 the shelves were not bent but were in good condition, but the record further discloses that after the incident in question the shelves appeared bent, obviously by someone attempting to mount them as a ladder. Photographs clearly show that three of the shelves were distinctly bent.
A croker sack inside a croker sack was found just north of the clinic, on the ground, by one of the officers. In it were three crowbars, screwdrivers, and other tools which could be utilized in breaking into and burglarizing a building. The record discloses that immediately upon receiving the call from Mr. Simmons the officers drove directly to the Long Beach Drug Company and stopped the car in front. Mr. George P. Clegg, who is the fire chief of Long Beach and also a policeman, was present when the call came in, and assisted in the capture of the appellant. He was in the patrol car with Officer Ware and Officer Billy Fennell, and Mr. Ware let him and Mr. Fennell off in front of the drugstore. He and Fennell immediately ran to the back of the drugstore, going on the left side thereof, and as they approached the back of the building they saw two figures leaving the back of the building. One of them wore a light yellow shirt and the other a dark jacket. Mr. Clegg picked the man with the light yellow shirt and proceeded to chase him. He ran him across the back of Mr. Simmons’ lot and saw him, when endeavoring to get over, the five foot fence, fall to the ground. He then saw him become entangled in the clothesline that was located on the other side of the fence. The stocky yellow shirted man then ran up on the back porch of the adjacent home and endeavored to open the screen door which was fastened. It was then that Mr. Clegg shined his flashlight into the face of the man, recognizing him so that he was able to thereafter identify him. When Mr. Clegg went around the fence, the appellant fled and hid behind one of two automobiles. Mr. Clegg saw him crouched there and said, “Here he is,” and told him to come out. The appellant said, “O.K., I give up.” The chief of police came and made a search of the premises and found the croker sack with the burglary tools, including a brace and bit, crowbar, hammer, screwdriver, and a rope with knots in it about a foot apart. A pair of gloves was found near the burglary tools. Chief of Police Harry Kalech took control of the burglary tools.
The record discloses that the appellant was caught approximately three hundred feet from where he was first seen in flight by the officers. The officers were within fifty or sixty feet of him when they first saw him and, as they ran, this distance was reduced.
There are but two errors assigned by the appellant. First, the trial court erred in refusing the appellant’s request for a directed verdict of not guilty because there was a fatal variance between the evidence offered on behalf of the state and the allegations used in the indictment because the proof showed that there was no attempt to burglarize the Long Beach Drug Company as charged in the indictment. Second, the verdict of the jury is against the overwhelming weight of the evidence.
We find that the verdict of the jury is not against the overwhelming weight of the evidence for the reason that an objective study of the record clearly reveals that the weight of the evidence is in support of the jury verdict of guilty. In support of the first contention, appellant appears to urge that because the shelves were located adjacent to the carport of the clinic there is no proof whatever that the drugstore was to be burglarized, particularly since Chief of Police Kalech testified to the effect that he could not find where any effort had been made to break and enter the drugstore.
*331 The proof in this case shows that the Long Beach Drug Company was the property of Gordon Justice, who was the sole proprietor. Officer Clegg, one of the first officers to arrive at the scene, and the first to see the two men, including the appellant, saw them at the back of the drugstore and not at the back of the clinic, which extends a considerable distance west of the drugstore. The mere fact that the display stand which was used as a ladder was placed so that the appellant would first have to cross the roof of the clinic does not negative the state’s theory that the carport was the lowest roof and the only roof which could have been reached by use of the display stand. Mr. Justice testified that at 2:30 in the afternoon he saw the stand of shelves and they were not bent, but that at 8:00 o’clock the next morning, subsequent to the arrest of the appellant, he noticed that the shelves were bent. Mr. Simmons positively saw two men take the stand and place it where it could be used as a ladder to gain access to the roof of the drugstore. Of course, this is a case of circumstantial evidence. The jury was properly instructed thereon as to the rules of law requiring the jury to believe the appellant to be guilty to the exclusion of any other reasonable hypothesis of innocence and to a moral certainty. The evidence was ample to justify the jury in concluding that the appellant and his accomplice were attempting to burglarize the drugstore.
No logical conclusion could have been reached but that these two men intended to commit burglary. After they had surveyed the situation several times in the car, they were seen moving the display stand and pushing it in position for access to the roof. A sack of tools was found at the scene and these tools were adaptable to the commission of burglary. We hold that the evidence is ample to establish the fact that it was the design of the appellant and his associate to commit the crime of burglary. This being true, his overt act in moving the stand and placing it in a position so that he could obtain access to the roof was in furtherance of the design and constitutes an attempt to commit burglary under the provisions of Mississippi Code 1942 Annotated Section 2017 (1956).
The rules of law controlling in this case are clearly set forth in Williams v. State, 209 Miss. 902, 48 So.2d 598 (1950); Poore v. State, 205 Miss. 528, 37 So.2d 3 (1948); Dill v. State, 149 Miss. 167, 115 So. 203 (1928); Nalls v. State, 128 Miss. 277, 90 So. 892 (1922); Stokes v. State, 92 Miss. 415, 46 So. 627, 21 L.R.A.,N.S., 898 (1908); and James v. State, 45 Miss. 572, 2 Mor. St. Cas. 1741 (1871).
For the foregoing reasons we hold that the proof in this case was ample to support the jury’s verdict of guilty under the indictment of attempted burglary and for these reasons the judgment and sentence are affirmed.
Affirmed.
ETHRIDGE, C. J, and RODGERS, JONES and SMITH, JJ., concur.