BRADY, Justice.
Appellant was convicted of the crime of murder in the Circuit Court of Warren County, Mississippi, and sentenced to life imprisonment in the Mississippi State Penitentiary. From that judgment he prosecutes this appeal. The following pertinent facts constitute a retributive example that “wine is a mocker, strong drink is raging.”
On the night of July 25, 1966, appellant was riding in an automobile driven by Curtis Lee Ennis, a twenty-two year old Negro man. The record discloses they were drinking corn whiskey and that they first went to Willie B. Naylor’s Cafe where they remained until approximately 8:30 P. M. After leaving this cafe they went to the Red Wing Cafe where they played cards. The bottle of whiskey which they *183 had was dropped and broken, but Ennis was sent to appellant’s home by appellant and obtained another bottle of whiskey. After leaving' the Red Wing Cafe they went to the home of Julia Williams, where they obtained something to eat. The record shows that after leaving Julia Williams’ home around 11:00 P. M. they decided to go to the Stave Mill Quarters. They went there but the house to which they were going was dark and so they returned. While returning, they passed a grocery store known as Margaret Rogers’ Grocery. As they were passing this store appellant noticed a woman coming out of the door. A portion of the testimony of witness Curtis Ennis follows:
Q. All right. What happened then?
A. Well when I get back by this Margaret’s store, this is where I see the lady coming out the door. And he told me to stop the car, you know, and let him out.
Q. Did what now?
A. I said when I was passing this here little old, what’s the name of it, Margaret’s store—
Q. Margaret’s Grocery?
A. Yes, sir. He told me for to stop and let him out. He said that that was the woman that tried to send him to the penitentiary.
Q. Did you see somebody on the Margaret’s Grocery Store?
A. Yes, sir.
Q. What was she doing?
A. Closing the door, going in or coming out. I think she was coming out because he told me he was going to go down—

Q. R. B. told you what?
A. He was going to get her.
Q. Was going to get her ?
A. Yes, sir.
Q. Did you let him out of the car?
A. Yes, sir.
Q. Where did you let him out of the car?
A. Right between Frank Lama’s and this Margaret’s store.
Q. Between Frank Lama’s and Margaret’s store?
A. I’d say about a quarter of a mile from Frank Lama’s.
Q. And which way did he go when you let him out of the car?
A. Well, we was headed this way. He went right, went straight down the street.
Q. Did he say why he was going to get that woman?
A. Yes sir, he did.
Q. What did he say?
A. He said she was the one that tried to send him to the penitentiary.
j}: % % ‡ % sfc
Q. All right. Which way did he go when you let him out of the car?
A. Right.
Q. To the right. Well was that towards or away from the railroad track?
A. That was cross — to the railroad tracks.
Q. That was what?
A. Going across toward—
Q. Going towards the railroad tracks?
A. Yes, sir.
Q. What did you do?
A. I went on. He told me for to wait for him about twenty minutes — make the block, you know, for him. I told him I didn’t have no gas, I was going on home.
*184 The record clearly reveals that the deceased, Annie Bell Moore, had left her home going to visit a friend of hers named Janice Williams. En route she talked to her mother, Roberta Sneed, whom she saw around 8:00 o’clock P. M. It is undisputed that the deceased went to Margaret’s Grocery around 10:00 P. M.; that she remained there for approximately an hour watching a television show known as “Laredo”; that when Margaret decided to close her store she assisted Margaret in doing so and obtained two packages of Pall Mall cigarettes which were charged to her account. The deceased locked the door through which she left around 11:00 P. M., at approximately the same time Ennis and appellant were approaching the store.
After letting the appellant out, Curtis Ennis went to the home of Flora Mae Hooker, where he was staying at the time. After eating something and watching TV for about thirty minutes he retired to his room. It is undisputed that appellant came to the home of Flora Mae Hooker and called Curtis Ennis. Flora Mae Hooker recognized the appellant by his voice and called Curtis Ennis telling him that R. B. was outside and wanted to see him. Ennis put on his shoes and trousers and went outside and talked with the appellant. En-nis testified as follows concerning his conversation with appellant:
A. Well he told me he had did something bad. And he gave me a package of cigarettes, and told me if anybody asked me anything to tell them that I took him home at nine thirty that night.
Q. Was he going to give you anything for telling people that?
A. Yes, sir.
******
Q. What did he tell you about that?
A. He told me anything that he had at his house I could get it.
Q. Anything that he had that you could get it?
A. Yes, sir.
Q. What kind of cigarettes did he give you?
A. A package of Pall Malls.
It is apparent from the record that subsequent to being told by the appellant that he had done something bad Curtis Lee Ennis was considerably disturbed. He sat on the foot of the bed of Flora Mae Hooker with his head bowed. The record indicates that Curtis Lee Ennis believed that appellant had killed Annie Bell Moore, though he did not know this to be a fact. Ennis dressed and left the house and went to the home of Alfred White for the purpose of making a telephone call to the sheriff. Unable to find anyone at Alfred White’s home, he went to another house and there placed a call for Mr. Newman, a deputy sheriff. Ennis gave as his reason for calling Mr. Newman that he thought the appellant had done something bad and he didn’t want to be involved in it. Unable to reach Mr. Newman, he talked to the jailer, who communicated over radio with Newman. Mr. Newman and Mr. Claud McBroom, another officer, picked Curtis Ennis up across from Burton’s Grocery Store. They drove around but failed to see anything of consequence. They did not walk up the railroad tracks. Ennis told the officers about receiving the package of Pall Mall cigarettes from the appellant.
On the morning of July 26 at about 11:50 A. M., J. W. Hearn, the deputy sheriff of Warren County, received a call from Mrs. Lama, who operates a grocery store in that neighborhood, advising that the body of a woman, who was later identified as Annie Bell Moore, had been found approximately ISO to 175 yards north of the crossing behind the Lama store. The deceased’s head was down in a ditch while her feet were pointed toward the track. Near her body were found a pocket knife, house key, and a partly smoked Pall Mall cigarette lying on slag near the body. The deceased’s throat was cut from ear to ear, *185 both large arteries and the windpipe being severed.
Photographs were made of the deceased by J. W. Hearn and were introduced in evidence. Two witnesses testified in behalf of appellant. The appellant’ sought to prove by these witnesses that he and Curtis Ennis did not go north toward the home where the deceased lived and toward which she was walking, but that they turned south. Julia Lee Williams, who lived in the home that appellant and Ennis went to after leaving the Red Wing Cafe, testified that they left in the car and that they were traveling south. Flora Mae Hooker testified that Julia Lee Williams was at her house on the night of July 25 and that Curtis Ennis was living at her house at the time. She corroborated the testimony of Julia Lee Williams relative to seeing the appellant and Curtis Ennis that night and talking to them, and stated that when they left they turned south. She admitted that appellant was a friend of hers and that he came to her house later that night and called for Curtis Ennis. She further stated that Ennis and appellant talked outside the house for approximately five minutes.
Margaret Rogers, who operates a grocery store approximately three-fourths mile from the Lama Store, testified that the deceased came to her store on the night of July 25. Margaret Rogers testified that she and her husband were watching the TV show known as “Laredo” which came on about 10:00 P. M.; that the deceased came in and watched the program with them for a while; that the program lasted for an hour and right before it was over the deceased told her that she would help her lock up the store; while they were locking the store the deceased said, “Give me two packs of Pall Mall cigarettes,” which she did. She further testified that the deceased took the cigarettes and left the store at approximately 11:00 P. M.
Over appellant’s objection the state was permitted to introduce an indictment which had been rendered approximately four years before against appellant. The indictment charged him with the crime of breaking and entering with the intent to rape, ravish and carnally know one Annie Bell Moore, for which crime appellant had been tried and acquitted. This is assigned as the second of three errors which appellant urges the trial court committed. The first error assigned is that the court erred in overruling appellant’s motion for a directed verdict immediately upon the state’s resting its case; and the third error assigned is that the verdict was against the great weight of the evidence.
There is no merit in the assigned error that the lower court wrongfully overruled appellant’s motion for a directed verdict. While this case is predicated largely upon circumstantial evidence since there were no actual witnesses to the homicide, the proof offered by the state is of a substantial nature and is such that the jury was justified under proper instructions in rendering a verdict of guilty. The proof shows that the deceased met her death by a criminal agency and that the appellant was guilty of committing the crime charged in the affidavit. The motive for the homicide was sufficiently presented. This taken together with the other circumstantial evidence in this case justified the trial court in submitting the question of whether or not the appellant was guilty or innocent to the jury for consideration. Since James v. State, 45 Miss. 572, 2 Mor.St.Cas. 1741 (1871), the law in Mississippi has been well established that in both civil and criminal cases the verdict may be well founded on circumstantial evidence alone.
In Browning v. State, 33 Miss. 47, 1 Mor.St.Cas. 991 (1857), this Court held:
What circumstances will amount to proof, can never be a matter of general definition; the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. * * * [ajbsolute metaphysical and demonstrative certainty is not essential to proof by *186 circumstances. It is sufficient if they produce moral certainty, to the exclusion of every reasonable doubt. (33 Miss. at 77.)
A conviction may be had on circumstantial evidence where it proves guilt beyond a reasonable doubt by excluding every other reasonable hypothesis than that of guilt. Nalls v. State, 128 Miss. 277, 90 So. 892 (1922).
We have consistently held that where circumstances produced moral certainty of guilt of the defendant to the exclusion of every reasonable doubt, a conviction on circumstantial evidence is justified. Poore v. State, 205 Miss. 528, 37 So.2d 3 (1948), sugg. of error overruled, 205 Miss. 528, 37 So.2d 357 (1948), cert. den. and app. dism., 336 U.S. 922, 69 S.Ct. 656, 93 L.Ed. 1084 (1949), rehearing den., 336 U.S. 947, 69 S.Ct. 810, 93 L.Ed. 1104 (1949).
In the case at bar the credibility of the witnesses was properly submitted to the jury. Under the evidence submitted by the state together with the instructions granted to both appellant and the state, we hold that no error was committed by the trial court in overruling the motion for a directed verdict.
We now turn to the second error assigned, namely, that the trial court erred in permitting the state to introduce into evidence the indictment charging the appellant with the commission of an unrelated crime committed four years previously for which crime the appellant had been tried and acquitted. The indictment which was introduced over appellant’s objection was not evidence of the commission of a former crime because the circuit clerk clearly testified on the witness stand that a jury found him to be not guilty. The indictment, therefore, was not evidence of the commission of another crime, but the indictment was used to corroborate the evidence of the intent of the appellant to commit a crime which the appellant had already declared to Ennis when he said, “That’s the woman who tried to send me to the penitentiary and I’m going to get her.” The circuit clerk testified that Annie Bell Moore, whose name was listed as a witness on the indictment, had testified before the grand jury four years prior thereto in support of the indictment. It is clear that we do not have here the establishment of an old crime committed four years before by the appellant, but corroborating testimony that the statements made by appellant that the deceased was the woman who tried to send him to the penitentiary was correct and that he was going to get her for it. Thus, this testimony corroborates his declared intent or motive. Appellant admits on page 4 of his brief that proof of other crimes can be made to establish motive, and in 29 Am. Jur.2d Evidence section 363 (1967) it is pointed out:
In criminal prosecutions, whenever the intent or motive of the accused is important and material, a somewhat wider range of evidence is permitted in showing such intent or motive than is allowed in support of other issues; otherwise, there would often be no means to reach and disclose the secret design or purpose of the act charged, in which the very gist of the offense may consist. Such intent or motive may be proved by either direct or circumstantial evidence. All evi-dentiary circumstances which are relative to, or tend to shed light on, the motive or intent of the defendant or which tend fairly to explain his actions, are admissible in evidence against him.
See Bangren v. State, 198 Miss. 359, 22 So.2d. 360 (1945); Gunter v. Reeves, 198 Miss. 31, 21 So.2d 468 (1945); and Bateman v. State, 64 Miss. 233, 1 So. 172 (1886).
In conclusion we hold that there is no merit in the error assigned by appellant that the verdict of the jury is against the great weight of the evidence. The verdict of the jury is clearly not against the great weight of the evidence but, to the contrary, is supported by the evidence. Poole v. State, 231 Miss. 1, 94 So.2d 239 (1957); *187 Conn v. State, 220 Miss. 427, 71 So.2d 192 (1954); Clark v. State, 206 Miss. 701, 39 So.2d 783 (1949), sugg. of error overruled, 206 Miss. 701, 40 So.2d 591 (1949); Faust v. State, 204 Miss. 297, 37 So.2d 315 (1948); Cunningham v. State, 200 So. 248 (Miss.1941).
For the foregoing reasons, the judgment is affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS’, JONES and INZER, JJ., concur.