PRESLEY *v.* STATE.

Mar. 23, 1953

No. 38611 25 Adv. S. 50 63 So. 2d 551

*H. W. Gautier, O. L. McLeod* and *Bidwell Adam,* for appellant.

*J. P. Coleman,* Attorney General, for appellee.

LOTTERHOS, J.

On January 25, 1952, a raid was made on the Sage Patch Cafe, located on the north side of U. S. Highway 90 near the line between Mississippi and Alabama; and certain slot machines found there, in the possession of appellant, were confiscated. Thereafter, appellant was convicted of the unlawful possession of said gambling devices in District No. 3 of Jackson County, Mississippi. The sole question raised on this appeal is whether the State has proved that the Sage Patch Cafe is in said district and county of Mississippi rather than in Alabama.

The evidence on this point can be summarized more succinctly and with greater clarity by presenting it as a whole, rather than as that for the State and that for appellant. In the first place, it was shown by several witnesses that for a number of years there had been a dispute, or uncertainty, as to the exact location of the state line. Among these witnesses were the sheriff of Jackson County, the chancery clerk, and two ex-sheriffs. There was evidence that several grand juries and a former sheriff had asked the board of supervisors to

have the line located, and that a statute (Chap. 319, Laws of 1946) had been enacted, directing the governor and the attorney general to have the boundary line established. The sheriff stated that he did not know where the state line is actually located, that he did not believe that anybody else knew, and that since he had been sheriff he had kept slot machines out of Jackson County, but had not raided the Sage Patch Cafe because of the dispute as to its location.

Two of the state's witnesses testified on direct examination that the Sage Patch Cafe is in Jackson County, Mississippi. But, on cross-examination, one of them stated that he could not swear that it is, because he did not know, and that his statement on direct examination was based on the fact that, for a number of years, the operators of the cafe had paid privilege and ad valorem taxes in Jackson County. The other stated on cross-examination that he had testified that the cafe is in Jackson County because "Sam Presley" owned quite a bit of acreage north and south of Highway 90 "against the Mississippi-Alabama line" and because the sheriff of Jackson County had collected ad valorem and privilege taxes on the property and business for a number of years. This witness, the sheriff, then testified at some length with reference to the dispute over the location of the line.

It was shown that for a number of years operators of the Sage Patch Cafe had paid ad valorem and privilege taxes in Jackson County, but the receipts are not in the record and it is not shown whether appellant had paid any such taxes as an operator of the cafe. There was testimony that one W. E. Howard had constructed the buildings (referring to the Sage Patch Cafe and the Sage Patch, a separate building on the south side of the highway, opposite to the cafe), that he was the owner of 100 or more acres of land in Jackson County against the eastern boundary lying north and south of U. S.

Highway 90, and that after the buildings were constructed he acquired a parcel of land in Mobile County, Alabama, on the highway at the state line. A deed dated in 1944 from Howard and wife to Sam Presley was identified, and it was stated that it conveyed certain land in Jackson County against the Alabama state line north and south of Highway 90, and also one acre of land in Mobile County, Alabama. The deed is not in the record. It was testified that land, buildings and improvements in Jackson County "against the state line" were assessed to Sam Presley and others for a number of years. Ad valorem tax receipts for a number of years on property assessed to Sam Presley on the Mississippi side of the state line "astraddle" of U. S. Highway 90 were identified, but they are not in the record.

The proof shows that there is a large granite boulder on the south side of the highway near the northeast corner of the Sage Patch, that a line run north from the boulder would strike the Sage Patch Cafe near the east side, and that the slot machines were found in the cafe west of such line. On the north side of the boulder, facing the highway, there is a bronze plaque with the following inscription: "Jefferson Davis Highway. Mississippi-Alabama. June 3—1928." On top of the boulder there is a bronze disc bearing this inscription: "U. S. Coast & Geodetic Survey Triangulation Station. For information write to the Director, Washington, D. C. $250.00 fine or imprisonment for disturbing this marker. State Line 1930." In the center of the disc there is a triangle with a dot or hole in the center. A deputy sheriff testified that the boulder had been there for several years, and that the circular disc was placed there by the U. S. Coast and Geodetic Survey. A former sheriff stated that the boulder was placed there by "some highway society or organization" and that afterward the U. S. Coast and Geodetic Survey disc was placed on top of it. There was no proof from any official source to

show whether or not the boulder was located as the result of a survey of the state line. The superintendent of a construction company which had done highway work for the State of Alabama at this point in 1951 testified that the boulder was moved several times during the construction work, but only a few feet on each occasion, that he did not know what its original location was, and that it was finally left near the northeast corner of the Sage Patch. On the south side of the highway just east of the Sage Patch, there is a concrete monument about eight inches square. There is a similar marker on the north side of the road near the east side of the Sage Patch Cafe. The witness first stated that these markers bore the inscription "Mississippi-Alabama State Line"; but, after the court and jury had viisted the scene, he withdrew the statement about the inscription, stated that these monuments were highway right-of-way markers, and added that similar markers are located further east in Alabama. There was testimony that these markers were not placed to mark the state line.

There are several photographs in the record showing the Sage Patch and the Sage Patch Cafe, as well as, the highway and the signs hereinafter mentioned. The proof shows that at a point about 160 feet west of the Sage Patch Cafe there are two large rectangular highway signs. One, on the south side of the road, bears the inscription: "Enter Mobile Co. Alabama. Leave Jackson Co. Mississippi." The other, on the north side, is lettered as follows: "Enter Jackson Co. Mississippi. Leave Mobile Co. Alabama." It was testified that these signs were erected by the Mississippi Highway Department in 1951 after the Alabama Highway Department had constructed new pavement on U. S. Highway 90 to the point where the signs are located. A short distance east of the sign indicating entry into Mississippi there is a typical highway sign in the form of a shield with the words, "Miss.-U. S. 90."

The construction company superintendent, previously referred to, testified that his company constructed the new Alabama pavement according to plans and specifications of the highway department of that state and under the direction of its engineers, that the new road began at Mobile, Alabama, and continued west to a point 165 feet west of the granite boulder previously mentioned, that the road was built to the point provided in the contract, as located by the engineers of the Alabama Highway Department, and that the contract provided that the road should be built to the Mississippi-Alabama state line.

A former sheriff of Jackson County testified that while he was sheriff the county surveyor of that county made a survey of the line at his request, that the line run by the county surveyor crossed the highway a few feet west of the Sage Patch Cafe, that the pavement was marked with an ''X'' at the point of crossing, and that this line placed the cafe east of the line and in Alabama. He also testified that about two years later a survey was made by the county surveyor of Mobile County, Alabama, and that the line which he ran crossed the highway about 160 to 180 feet west of the Sage Patch Cafe, and placed it in Alabama. Neither the surveys nor the surveyors were offered, but it was shown that one of the surveyors had died.

Without going into detail to discuss the above testimony, it appears that the state principally shows that there is a granite marker, apparently placed by the U. S. Coast and Geodetic Survey, located at a point indicating that the Sage Patch Cafe is just over the line in Mississippi, and that the operators of the Sage Patch Cafe have for many years paid taxes in Jackson County, Mississippi. On the other hand, appellant shows that in 1951 the Alabama Highway Department constructed an Alabama highway to a point about 160 feet west of the Sage Patch Cafe, and that at this point the Mississippi High-

way Department erected two road signs showing on one an entry into Mississippi from the east and on the other an entry into Alabama from the west. Appellant's testimony also includes that with respect to the running of the line between the two states by the Jackson County surveyor and the Mobile County, Alabama, surveyor, both of whom placed the line west of the Sage Patch Cafe. It is further shown by numerous witnesses that there has been uncertainty as to the exact location of the state line for many years. In this state of the record, we are confronted with the question whether there has been a sufficient proof of venue by the state.

The case was submitted to the jury under instructions requiring that venue be proved beyond a reasonable doubt. The state argues that proof of venue need not be made to that degree, and also that there was sufficient evidence on which the jury could find the venue beyond a reasonable doubt. We note that there is a difference of view in various jurisdictions as to whether venue must be proved beyond a reasonable doubt or may be shown by a preponderance of the evidence. See 23 C. J. S., Criminal Law, Sec. 914 c, p. 174, and 20 Am. Jur., Evidence, Sec. 1259, p. 1112. Upon examination of the Mississippi cases, it appears that this court has aligned itself with those which require that ▆▆ proof of venue, as of any other element of an offense, be made beyond a reasonable doubt, and we think that is the correct rule.

In Ussery v. State, 154 Miss. 704, 123 So. 854, a conviction was reversed where there was a failure to prove that the offense was committed in the State of Mississippi. In reversing this case, the court said: ''The venue is jurisdictional in criminal cases and may be availed of on appeal for the first time, and if the venue is not proven either by direct or circumstantial evidence to the extent required by law, the judgment will be reversed for a failure to prove venue. When circumstantial evidence is relied upon to prove venue, it must not only be

consistent with the theory sought to be proven, but it must be absolutely inconsistent with any other theory." Kitchens v. State, 186 Miss. 443, 191 So. 116, was to the same effect. In the opinion therein, the court approved and followed the rule of the Ussery case, specifically stating the rule in language similar to that above quoted. This rule was also stated in Dorsey v. State, 141 Miss. 600, 106 So. 827, an earlier case, although the judgment below was actually reversed on another ground. In Waldrup v. State, 150 Miss. 302, 116 So. 432, a judgment was reversed for failure to prove the venue. This was an instance of a prosecution for unlawfully enticing away the laborer or renter of the prosecuting witness. The proof showed that the prosecuting witness lived in the proper supervisor's district of the county·involved, that the justice of the peace before whom the prosecution was instituted was in that district, and that the alleged tenant who was enticed away lived on the place of the prosecuting witness, but there was no proof that the prosecuting witness had only one place or plantation and no proof that the tenant lived in that particular district. In reversing this case, the court used the following language: "It is a familiar rule that in criminal cases the state must prove every material allegation of the affidavit or indictment, by competent evidence, and beyond every reasonable doubt. Venue is not to be. presumed, but must be proved; and, therefore, the present record is wholly insufficient to establish venue, and for this reason the judgment of conviction must be reversed."

 The rule as applied to the case at bar is not modified by Sec. 2419, Code of 1942, providing that "if on the trial the evidence make it doubtful in which of several counties, or judicial districts, or justice of the peace districts, . . . including that in which the indictment, or affidavit, alleges it, the offense was committed, such doubt shall not avail to procure the acquittal of the defendant." This statute eliminates the requirement that

proof of venue be beyond a reasonable doubt in cases where there is a conflict in the evidence as to which of two or more counties or districts in Mississippi is the place of the offense; but it has no application where the question is whether or not the alleged criminal act was committed in Mississippi.

■■■ If venue must be proved, particularly in cases where circumstantial evidence is relied upon, to such an extent as that the evidence shall be consistent only with the theory sought to be proven and must be absolutely inconsistent with any other theory, as pointed out in the Ussery case, when the court has under consideration only the sufficiency of the proof offered by the state, as in the cases above cited, then it seems to us that by the stronger reason the proof of venue must be beyond a reasonable doubt when the location or scene of the alleged crime is the principal point at issue in the case. We conclude that in the case at bar it was necessary that the jury find, as it was instructed, that the venue was proved beyond a reasonable doubt, before it could bring in a verdict of guilty. Applying that rule to the proof in this case, it seems inescapable that there is such uncertainty and doubt arising from the evidence on the question whether the Alabama-Mississippi line lies east or west of the Sage Patch Cafe, that we must reverse the case for a new trial. The case might be different if there were direct proof of a survey by a proper official agency establishing the line between the two states at the point where the granite boulder is located. But, on the present record, we have merely the fact that the boulder is located there, with a certain inscription on it purporting to indicate that it marks a line officially surveyed. As against the location of this boulder, we are confronted by the testimony, again without the official surveys being introduced or properly proven, that two different surveys were made by county surveyors showing the line between the states as located west of the Sage Patch

Cafe; and we are also confronted by the fact that the Alabama Highway Department and the Mississippi Highway Department have given recognition to the location of the line about 160 feet west of the cafe.

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Holmes* and *Arrington, JJ.,* concur.