263 So.2d 773 (1972)
STATE of Mississippi
v.
Bobby J. FABIAN.
No. 46762.
Supreme Court of Mississippi.
May 29, 1972.
*774 A.F. Summer, Atty. Gen. by Marshall G. Bennett and Edwin A. Snyder, Sp. Asst. Attys. Gen., Jackson, for appellant.
Garner, Whitten & Garner, Jon B. Love, Hernando, for appellee.
SUGG, Justice.
Bobby J. Fabian, appellee and cross-appellant hereinafter referred to as appellee, was indicted by the Grand Jury of Marshall County, Mississippi for the murder of George Lenox. Appellee filed a motion to quash the indictment for lack of jurisdiction and assigned the following grounds:
1. That there has been no crime committed in the State of Mississippi and therefore the State of Mississippi has no jurisdiction under this indictment.
2. That the indictment herein does not state the violation of any law of the State of Mississippi.
When the motion to quash came on for hearing, appellee refused to offer evidence in support of his motion and the Circuit Court overruled the motion. The Court, on its own motion, inquired into the question raised by the motion to quash, and, after a lengthy hearing, held that it did not have jurisdiction because the proof did not show beyond a reasonable doubt that the fatal shots which killed decedent were fired in the State of Mississippi.
*775 Appellee also filed a motion to suppress a confession signed by him on January 21, 1971 including any statements or admissions made by him. The court overruled the motion to suppress the confession and appellee filed a cross-appeal from this action of the court.
The first question to be considered is whether or not the court was correct in its preliminary examination of the question of venue.
Under Mississippi criminal procedure, questions of fact as to venue are for the determination of the jury and are not to be decided by the trial court. An accused who, by motion, seeks to challenge the venue of the court on the ground the crime charged was committed in another state or another circuit court district, is not entitled, as a matter of right, to have a preliminary evidentiary hearing with a determination by the trial court of the question raised in advance of trial.
Rare and exceptional circumstances might justify the trial court, in the exercise of sound judicial discretion, in granting a hearing upon such a motion. In such an event, the burden of going forward must rest upon the movant, and the motion should be denied if the evidence adduced, whether pro or con, would be capable of supporting a factual finding by the jury on the trial that venue of the crime was as charged in the indictment.
Upon the failure or refusal of the movant to go forward with proof in support of his motion, it should be overruled. For the purpose of such a hearing, an indictment establishes a prima facie case that the crime was committed at the place charged therein. In the present case, the court correctly overruled the motion of accused because of his refusal to offer any evidence whatever.
The Court elected, in the exercise of its judicial discretion, after overruling the motion, to inquire preliminarily into the question of its jurisdiction based upon venue.
In such cases, the court need only determine that there is relevant and competent evidence supporting the allegations of the indictment with respect to venue and that this evidence is sufficient to warrant submission of the issue to the jury for determination. This is true, of course, where countervailing evidence is offered. If there is no evidence whatever supporting the allegation of venue, then the court will dismiss the case for that reason without prejudice to try the case in the court having venue.
The procedure adopted in this case is novel and hitherto unknown to Mississippi criminal practice and procedure. While its use is not to be entirely excluded, and it must be regarded as a matter lying within the range of the permissible exercise of sound judicial discretion, it should be permitted only rarely and under the most exceptional circumstances.
We next consider the evidence adduced at the hearing and the applicable law to determine if the Court erred in holding that the State failed to prove beyond a reasonable doubt that Lenox was killed in Marshall County, Mississippi.
The body of decedent was found in the State of Mississippi and the evidence showed that he died as a result of two gunshot wounds fired by a pistol.
In other jurisdictions the rule has been announced that the finding of a dead body in a particular county raises a presumption, or supports an inference, that the killing took place there. Another well known presumption is that life, like any other condition, continues until there is evidence to the contrary.[1] We adopt both presumptions as a rule in Mississippi.
*776 In United States v. Rees, 193 F. Supp. 849 (Md. 1961) the United States District Court stated:
The evidence justifies the inference that both Mrs. Jackson and Susan were killed at or near the spot where they were buried.
That inference is aided by a number of presumptions. The first is the reasonable presumption, generally recognized, that a person died in the state and county where his body was found. In Breeding v. State, 220 Md. 193, at page 200, 151 A.2d 743, at page 747, the court said: "Finally, the appellant contends that the State failed to prove that the killing took place in Caroline County or in Maryland. It is true that the State of Maryland cannot punish for a crime committed in another state, Bowen v. State, 206 Md. 368, 111 A.2d 844. But venue may be established by circumstantial evidence. The cases hold that the finding of a dead body in a particular county raises a presumption, or supports an inference, that the killing took place there." Some of the authorities speak in terms of venue, rather than jurisdiction but it is clear that the prosecution must show that the crime was committed in the state as well as in a particular county, and the facts support the inference of the one as well as of the other. See People v. Peete, 54 Cal. App. 333, 202 P. 51, 64; Commonwealth v. Costley, 118 Mass. 1, 26; Hawkins v. State, 60 Neb. 380, 83 N.W. 198; Wharton on Homicide, 3d ed., 1907, pp. 901-2.
There is also the presumption that life, like any other condition, continues until there is evidence to the contrary.[11]
[11] This is an entirely different presumption than the presumption of death after seven years.
Wigmore on Evidence, sec. 2531, p. 462, 3d ed., and cases cited; McCormick on Evidence, p. 462; Allen v. Mazurowski, 317 Mass. 218, 57 N.E.2d 544. (193 F. Supp. at 859.)
In 22 C.J.S. Criminal Law § 185(17) the rule is stated as follows:
Aside from any statutory provision, the finding of the body in a county would warrant a finding that the murder was committed in that county. One should not be permitted to escape punishment for murder because he is clever enough to conceal the place where the victim was killed or died.
The presumption that death occurs where a body is found coupled with the other evidence heard by the court was sufficient to establish the venue of the crime in Marshall County, Mississippi. The proof of venue was by circumstantial evidence.
In Poore v. State, 205 Miss. 528, 37 So.2d 3, suggestion of error overruled, 205 Miss. 528, 37 So.2d 357, certiorari denied 336 U.S. 992, 69 S.Ct. 656, 93 L.Ed. 1084, rehearing denied, 336 U.S. 947, 69 S.Ct. 810, 93 L.Ed. 1104 (1948), we held that venue can be proved either by direct or circumstantial evidence.
We are not unmindful of the rule in Mississippi that when venue is shown by circumstantial evidence it must be shown to the exclusion of every other reasonable hypothesis. See Dorsey v. State, 141 Miss. 600, 106 So. 827 (1926); Ussery v. State, 154 Miss. 704, 123 So. 854 (1929); and Kitchens v. State, 186 Miss. 443, 191 So. 116 (1939).
In Presley v. State, 217 Miss. 112, 63 So.2d 551 (1950) the Court reaffirmed the rule that proof of venue, as any other element of an offense, must be made beyond a reasonable doubt and when circumstantial evidence is relied upon to prove venue, it must not only be consistent with the theory sought to be proven, but must be absolutely inconsistent with any other theory as pointed out in Ussery.
The presumption that the killing took place where the body was found is a *777 rebuttable presumption; however, when this fact is shown the state has met all requirements of venue in a murder case to that point. If evidence is offered to rebut this presumption, the question of venue is a matter for the jury to determine under proper instructions.
Section 2430 of the Mississippi Code of 1942 Annotated (1956) provides:
Where the mortal stroke or other cause of death occurs or is given or administered in one county, and the death occurs in another county, the offender may be indicted and tried in either county; and so, also, if the mortal stroke or cause of death occur or be given or administered in another state or country and the death happen in this state, the offender may be indicted and tried in the county in which the death happened.
Section 2430, supra, was held constitutional in Caldwell v. State, 176 Miss. 80, 167 So. 779 (1936).
Appellee attacks the constitutionality of Section 2430, supra, on the ground that the United States Supreme Court has, since the decision in Caldwell, supra, held that the first eight Amendments to the United States Constitution apply to states by virtue of the Fourteenth Amendment. Crapps v. State, 221 So.2d 722 (Miss. 1969).
Appellee states in his brief that he has been unable to find any case directly in point in support of his argument that Section 2430, supra, is unconstitutional because it violates the provisions of the Sixth Amendment to the Constitution of the United States.
Our research does not reveal a case precisly in point but in Willis v. O'Brien, 151 W. Va. 628, 153 S.E.2d 178 (1967), certiorari denied, 389 U.S. 848, 88 S.Ct. 71, 19 L.Ed.2d 116, rehearing denied, 389 U.S. 997, 88 S.Ct. 461, 19 L.Ed.2d 499, appellant was convicted of murder in Ohio County, West Virginia because of a criminal abortion performed by him upon the deceased in Brooke County, West Virginia and death resulted therefrom in Ohio County.
The West Virginia Court in passing on this case stated as follows:
The petitioner was not accused of the offense of unlawful abortion. He was charged with the offense of murder. The performance of the abortion of which he was guilty, if proved, occurred in Brooke County, but the death, making complete the offense of murder, as charged in the indictment, occurred in Ohio County. Under the provisions of Code, 1931, 61-2-8, the petitioner could not have committed murder unless and until death occurred as a result of his act. When such death occurred he committed the murder, provided the essential elements be proved in a proper trial.
......
In the instant case if the petitioner did in fact perform an unlawful abortion, he put in force an agency which, under the statute, could result in the crime of murder. In accordance with the foregoing theory he accompanied the agency to Ohio County, the point where the crime of murder became effectual. We are of the opinion, therefore, that the offense charged in the indictment was committed in Ohio County. See Hauk v. State, 148 Ind. 238, 46 N.E. 127, 47 N.E. 465; People v. Southwick, 272 Mich. 258, 261 N.W. 320.
The petitioner attacks as unconstitutional Code, 1931, 61-11-12, upon which the state further relies for placing venue of this case in Ohio County. That statute provides:
"If a mortal wound or other violence or injury be inflicted, or poison be administered, in one county, and death ensue therefrom in another county, the offense may be prosecuted in either."
It is contended that such statute is contrary to our constitutional provision which requires the trial of a crime in the "county where the alleged offence was committed." Unlike the statute in effect when State v. Lowe, 21 W. Va. 782, was *778 decided, Code, 1931, 61-11-12 does not provide that an offense may be prosecuted in a county other than that in which it was committed. It is a remedial statute and should be construed liberally to accomplish the purpose for which it was enacted. Esque v. City of Huntington, 104 W. Va. 110, 139 S.E. 469, 54 A.L.R. 785; Hasson v. City of Chester, 67 W. Va. 278, 67 S.E. 731; 17 M.J. Statutes, Section 72. That purpose is to correct the unreasonable principle established under the ancient common law to the effect that if a person were stricken in one county and died therefrom in another, he could be prosecuted in neither. Realizing the inequity of this situation, legislative bodies began to adopt remedial legislation. The statute under consideration is an example of such legislation.
Although our research reveals that the constitutionality of Code, 1931, 61-11-12 has never been challenged, it was held in State v. Bragg, 140 W. Va. 585, 87 S.E.2d 689: "Under Code, 61-11-12, the venue for murder lies in the county where the fatal injury is inflicted, or if death occurs in another county, venue also lies in such other county." In McNeeley ex parte, 36 W. Va. 84, 14 S.E. 436, 15 L.R.A. 226, there was much dicta to the effect that the prosecution should take place where the blow was inflicted rather than where the death occurred. However, the Court held that under Chapter 144, Section 6 of the Code the place of death was the proper venue of the trial. The statute then in effect, while relating to a stroke rendered out of the state and death therefrom occurring in the state, embraced the same principle as that now found in Code, 1931, 61-11-12.
Having concluded herein that the offense was committed in Ohio County, the place where the death occurred, we hold untenable the contention that Code, 1931, 61-11-12 is unconstitutional... . (153 S.E.2d at 181, 182.)
In 22 C.J.S. Criminal Law § 185(17) at pages 478 and 479 the following appears:
In accordance with the general rule, the proper venue of a prosecution for homicide is the county wherein the crime was committed. Where a mortal blow was inflicted or poison was given in one county and death ensued in another, it was doubted at common law whether the homicide could be tried in either. The courts, however, have held that there is jurisdiction in such a case, most of them holding that the prosecution should be in the county where the blow was given or where the poison was administered. To remove any doubt and to prevent a failure of justice, the act of 2 and 3 Edward VI was passed in England, which established the venue in the county in which the death should take place. In the United States, in many jurisdictions, the question is now settled by statutes, under some of which the prosecution is in the county where the injury was inflicted, while under others it is in the county where the death ensued, and under still others it may be in either county. Under some statutes, the venue may be laid in any county in which any act constituting an element of, or requisite to, the commission of the homicide occurred. A statute permitting the venue of an action for homicide in the county where the injury was inflicted or death occurred does not prevent the venue of a homicide trial from being fixed under the general statute permitting venue to be laid in any county in which any act constituting or requisite to the commission of the offense occurred.
Although Willis, supra, dealt with a crime where death and the act causing it occurred in the same state, the constitutional right of the accused to "a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ..." (emphasis added) as guaranteed by the Sixth Amendment, was not violated by his trial in the county where death occurred rather *779 than in the county where the act causing death was performed.
The same reasoning should apply when the act causing death is performed in one state and death ensues in another state. Of course an accused cannot be tried for the same crime in two different courts and where each have jurisdiction the court in which proceedings are first begun should proceed.
In 40 Am.Jur.2d, Homicide, § 199 the general rule is stated as follows:
In England, an early act of Parliament provided that a person may be tried and convicted for a homicide based upon a death occurring there from an act committed elsewhere, or upon an act committed within the Kingdom which causes death elsewhere. Statutes of similar import have been enacted in several jurisdictions in this country, and while there is a difference of opinion on the question, most of the courts take the view that there is no constitutional objection to a statute extending the jurisdiction of the state courts to embrace a prosecution for homicide based on injuries inflicted without the state, where the death occurs within the state... .
We hold that there is no constitutional objection to Section 2430 extending the jurisdiction of Mississippi to embrace a prosecution for murder based on injuries inflicted without the state where the death occurs within the state.
The provisions of Section 2430 coupled with the presumption that a person was killed in the State and County where the body was found operate to minimize one escaping punishment for murder because he is clever enough to conceal the place where the victim was killed or died.
Appellee and cross-appellant urges that the trial court erred in overruling his motion to suppress his written confession of January 21, 1971 and among other things claimed:
That at the time any and all statements were made by the Defendant that said statements were induced by promises of leniency and reward by the lawful authorities representing the States of Mississippi, Tennessee and Louisiana. That at said time of the aforesaid statements, the Defendant was incarcerated in jail awaiting trial for a capital offense wherein the death penalty was a possible punishment. That Defendant was mislead [sic] by said law enforcement officials that he would be given a light sentence and favorable treatment for his statements and admissions in the above captioned cause. That at no time was the Defendant ever told or advised by any law enforcement official of any state or Federal authority that he was entitled to have an attorney present and Defendant would submit and show in fact that he was led to believe by said authorities that an attorney being present in his behalf would only be detrimental to his case.
On January 21, 1971 appellee was interrogated at the Louisiana State Penitentiary located at Angola, Louisiana by Rex Armistead, Chief Investigator for the Mississippi Highway Patrol, Daniel I. Davis, Assistant Chief Investigator for the Mississippi Highway Patrol and Marshall Bennett, Chief of Organized Crime Section, Criminal Division of the Attorney General's Office of the State of Mississippi.
Before these officers questioned appellee they read to him and appellee signed a statement which fully complies with the Miranda warning. Appellee made an oral confession to the three interrogators and after his oral confession, Mrs. Linda Stone, secretary to Rex Armistead, made stenographic notes of the second confession of appellee. Her stenographic notes were typed in the presence of appellee and as each page was completed it was read and signed by appellee who then signed the entire confession which consisted of five typewritten pages.
*780 The evidence shows that Rex Armistead had talked to appellee on two previous occasions, the first being in June, 1970 shortly after appellee was apprehended in Louisiana. At the first conversation, Inspector Dan Jones and Captain Bill Maley of the Shelby County Sheriff's Department were present with Rex Armistead. Appellee did not confess the Lenox murder as the result of this questioning.
Rex Armistead next saw and talked to appellee at the Louisiana State Penitentiary in the presence of John Dan Moulder, a Lieutenant of the Jackson, Mississippi Police Department (at some places in the transcript the name of the Lieutenant of the Jackson, Mississippi Police Department appears as Lieutenant John Dan Moore). The witness Armistead stated that Fabian was advised of his rights and made an oral statement to him and Lieutenant John Dan Moulder.
Appellee's testimony with reference to his conversation with witness Armistead and Lieutenant Moulder is as follows:
Q. All right, in December or January, December, '70 or January of '71, what officers did you see at that time?
A. When was that; oh, Rex Armistead and another officer with him, I don't know his name.
Q. Is that Lt. Moulder Mr. Armistead testified about this morning?
A. I said I guess I wouldn't know him; if I seen him, I ain't sure I would know him then.
Q. It was one other individual with him, wasn't it?
A. Yes, sir, it was.
Q. All right, and you talked with Rex at that time, didn't you?
A. Yes, I did.
Q. What, if anything, did he offer you then?
A. Just the same thing he had been offering me all along for the jump, told me if I would go on, said, I wasn't going to throw this back in his face; in other words, welch out of it or anything. In other words, he was there to be sure that I was still going along with the program that him and Inspector Dan Jones set up.
Q. What did he promise you?
A. Like I say, I was promised to get my sentence commuted to ten years, six months and all outstanding detainers lifted.
Q. For what?
A. If I would go on, give the statement and get up and testify and frame George Sammons and Mr. Williamson for the money.
Q. All right, did you give him a statement at that time?
A. It was just an oral statement, it wasn't really a statement, he just went over some of the things he had done went over with Dan Jones.
Appellee stated that he signed a confession in October, 1970 for Jones and Maley, officers from Tennessee, and the confession was signed on the basis of certain promises made to him at that time by these officers. Appellee claims that the Tennessee officers promised to pay him money and that Jones paid him $1,000 on July 7th and wired him an additional $1,000 in October, 1970 before he went to trial in Rayfield, Louisiana.
Appellee contends that Rex Armistead promised that if he would sign a confession that he (appellee) would be a trusty and Armistead would get his sentence commuted. He also claims that the Mississippi officers offered him leniency and that he told them about Dan Jones, the Tennessee officer, paying him $1,000.
With reference to the promises made to him before he signed the January 21, 1971 *781 confession a question to the appellee and his response was as follows:
Q. Okay, now, before you gave that confession, what promises were made to you by Mr. Davis or Mr. Armistead or Mr. Bennett or Mrs. Stone or by anybody?
A. Just the same promises had been made all along. They told me they was working for me, was going to help me; the only way I could get any help was to go along with them and that's the reason the State was getting it.
In Armstrong v. State, 214 So.2d 589 (Miss. 1968) this Court stated:
The mere fact that one has once confessed to an officer who did not warn him of his constitutional rights does not preclude the admission of a later confession which was freely and voluntarily given, after proper warning, unless it appears that the second confession was brought about as the result of having given the first confession, or under the same influence which caused the first confession. White v. State, 129 Miss. 182, 91 So. 903, 24 A.L.R. 699 (1922).
This Court held as early as 1844, in the case of Peter v. State, 12 Miss. (4 S. & M.) 31 (1844), that there was a presumption of law that a confession obtained by the influence of a threat or a promise, once made, continues to operate unless it is shown that a subsequent confession was not made under the influence of the previous threat or promise. This rule has been carefully guarded by this Court through the years.
On the other hand, where it is shown that a subsequent confession was made after proper warning and was free from the influence which might have prompted the former confession, such subsequent confession is admissible in evidence. Simmons v. State, 61 Miss. 243 (1883). We are convinced that the confessions admitted into evidence in the instant case were freely and voluntarily given, because the prisoner was properly warned of his constitutional rights. We therefore hold that the confessions were properly admitted in the evidence by the trial judge. We do not consider the holdings of the Court in Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), to be contrary to our holding under the facts shown in the case now before this Court. (214 So.2d at 592.)
Appellee contends on appeal that the court erred in not admitting his testimony of offer of money and promises of leniency made to him by officers from Tennessee which prompted his confession to them in October, 1970, and relies on Ladner v. State, 231 Miss. 445, 449, 95 So.2d 468, 470 (1957), where we stated:
We have held in several decisions, notably Barnes v. State, 199 Miss. 86, 23 So.2d 405, that the influences and inducements which rendered a previous confession inadmissible as not being free and voluntary are presumed to continue in operation at the time of a subsequent confession made shortly thereafter, unless such influences are clearly shown to have been removed or the promises and inducements have been withdrawn. Barnes v. State, supra, is directly in point here as no attempt was made by the State to meet the requirements for the admission of a second confession made shortly after a previous one which was not admissible because not voluntary.
Although the Tennessee confession was not before it, the court was in error in not considering the testimony of appellee as to the promises made by the Tennessee officers; however, if the testimony of appellee pertaining to the Tennessee confession is accorded full credence, the record is clear that the confession made to the Mississippi officers three months later was free and clear of influences and inducements made by the Tennessee officers.
The testimony clearly meets the tests of Ladner, supra, and it was not necessary *782 for the State to have the Tennessee officers present to testify.
Appellee had his rights explained to him prior to the January 21, 1971 confession and knowingly and intelligently waived his rights to an attorney and expressed his willingness to answer questions and make a statement.
Appellee signed a waiver entitled "Your Rights" which shows conclusively that he was aware of his constitutional rights.
It is crystal clear that the Mississippi officers did not make any promises to appellee that would render his confession inadmissible. We are convinced that his confession to the Mississippi officers was freely and voluntarily made.
The ruling of the trial judge with reference to the motion to suppress the written confession of appellee is affirmed.
The case is reversed on direct appeal, affirmed on cross-appeal and remanded for trial.
Reversed on direct appeal, affirmed on cross-appeal and remanded for trial.
RODGERS, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.
NOTES
[1] As noted in United States v. Rees, infra, this is an entirely different presumption from the presumption of death after seven years absence. See Sections 1698 and 1698-01, Mississippi Code 1942 Annotated (1956).