360 So.2d 674 (1978)
Ronnie Gene KNIGHT
v.
STATE of Mississippi.
No. 50476.
Supreme Court of Mississippi.
May 31, 1978.
Rehearing Denied July 26, 1978.
*675 Upshaw, Schissel, Dorizas & Ladner, James E. Upshaw, Greenwood, for appellant.
A.F. Summer, Atty. Gen., by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Ronnie Gene Knight was indicted and tried in the Circuit Court of Leflore County for the crime of rape. The jury was unable to agree on a verdict in the first trial, and the court declared a mistrial. He was tried again March 22, 1977, the jury returned a verdict of guilty and he was sentenced to serve a term of twenty-five (25) years in the custody of the Mississippi Department of Corrections, from which sentence and judgment he appeals.
The prosecutrix testified that on March 26, 1976, about 9:30 p.m. she was working as a cashier at the Jitney Jr. store in Greenwood when appellant, whom she did not know, entered the store and asked for some Cocoa. She turned around to find the item, appellant grabbed her from behind, placed a knife to her neck, and forced her to leave the store, get in his automobile and accompany him to a place several miles from the city. Still threatening her with the knife, he forced her to disrobe, then he undressed and raped her. Appellant drove back to Greenwood, let her out of the automobile on a public street, and went to his home.
Prosecutrix took down appellant's tag number when she left the automobile, and immediately notified the police. She was distraught and her clothes were disarranged. The officers lifted fingerprints off a can of Cocoa found in the store which matched the known prints of appellant. Spermatozoa were found on the underclothes of the prosecutrix, fibers on the clothing of appellant matched fibers taken from the clothing of the prosecutrix. Appellant did not testify.

I.
Appellant contends that the trial court erred (a) in permitting Dr. Bell to testify as an expert in the areas of psychomotor seizures and neurology, (b) in permitting Dr. Bell to testify that, in his opinion, appellant was not having a psychomotor seizure on the night of the alleged crime, and (c) in permitting Dr. Bell to testify concerning the opinions of an examination and tests performed by other persons who did not testify.

II.
Appellant further contends that the trial court erred in refusing to set aside the verdict of the jury as being against the overwhelming weight of the evidence on the issue of appellant's sanity.
Appellant was twenty-four (24) years of age at the time of the alleged crime. The prosecutrix was forty-eight (48) years of age, married, with two (2) children. Appellant finished high school at seventeen (17) years of age, served in the National Guard, and entered the University of Arkansas as a pre-law student. In June, 1972, he was involved in a motorcycle wreck which resulted in severe brain damage. He had epileptic-type seizures several times a day and received treatment in various hospitals, including Mayo Clinic, Rochester, Minnesota. In 1976, he shot himself in the jaw with a 30-30 caliber rifle, was hospitalized at the Delta Medical Clinic in Intensive Care for approximately thirty (30) days, subsequently, *676 was transferred to the Psychiatric Ward in Little Rock, Arkansas, and was also hospitalized at the Baptist Medical Center.
Appellant was sent to Mississippi State Hospital at Whitfield on April 14, 1976 (after the assault incident) where he was examined and treated by Dr. Charles E. Bell, and others, for a period of thirty (30) days. Dr. Bell is Director of Men's Psychiatric Service at the Mississippi State Hospital and has been a member of the staff for fifteen (15) years. He holds membership in the American Medical Association, Mississippi Medical Association, the Central Medical Association, the American Psychiatric Association and the Mississippi Psychiatric Association. He served his internship in the field of neurology, had six (6) months training in the neurological clinic at the University of Louisville, Kentucky, and has had experience at the Mississippi State Hospital where he was in charge of the epileptic ward with forty (40) men during a period of five (5) years. Dr. Bell testified that he is capable of diagnosing psychomotor seizures and neurological problems and has had training in the treatment of psychomotor seizures. He is able to diagnose such problems and is capable of telling whether or not a person has brain damage or suffers from psychomotor seizures. He performed a neurological examination on appellant and concluded that he was suffering from psychomotor seizures and was without psychosis. Appellant related to Dr. Bell the following history:
"He had had trouble with his nerves and he had seizures since shortly after a motor cycle accident some time ago; that he had gotten into trouble just prior to his admission and was charged with rape. He stated that he had been to the hospital to visit a cousin, that he had stopped at the store to get a book and had drank a coke and had taken a lady from the store at knife point, had driven her to the country and had had sex relations with her. She promised not to tell if he would take her back to town and this he did after which he went home and went to bed."
Dr. Bell testified that, in his opinion, appellant was not suffering from a psychomotor seizure during the time the crime was being committed for the reason that, if he had been suffering from same, he would not have been able to recall the events and would not have been able to tell him in detail what had happened. Dr. Bell was of the further opinion that appellant knew right from wrong at the time of the incident and was aware of what he was doing.
In order for a physician to qualify as an expert it may be shown that he possesses peculiar knowledge respecting the subject matter. The record overwhelmingly discloses that Dr. Bell possessed the medical background, practical experience and ability to testify in the field of neurology, and the court correctly permitted him to testify as an expert in that field. Grinnell v. State, 230 So.2d 555 (Miss. 1970); Floyd v. State, 166 Miss. 15, 148 So. 226 (1933).
Having qualified as an expert, it was proper to permit Dr. Bell to testify that, in his opinion, appellant was not having a psychomotor seizure at the time of the crime, particularly so, since he gave reasons upon which he based his opinion. The opinion was not based on tests and examinations prepared by other persons at Mississippi State Hospital, but was based upon his knowledge of the neurological problem from which appellant suffered, and his knowledge of symptoms of psychomotor attacks. Further, on cross-examination, appellant's counsel asked Dr. Bell what Dr. Lancaster (physician at Mississippi State Hospital) gave appellant and then interrogated Dr. Bell with reference to his consultation with Dr. Lancaster.
Appellant called Dr. Orlando J. Andy, a neurosurgeon, to testify on his behalf. Dr. Andy first saw appellant on June 7, 1976, diagnosed his condition as major motor seizures, recommended surgery, and performed an operation which lasted approximately six (6) hours. The surgery was successful and appellant has not been afflicted with the seizures since the operation. Dr. Andy testified that, in his opinion, appellant was undergoing a seizure at the time of the *677 alleged crime and was not responsible for the act. However, on cross-examination, he stated that, if appellant recalled the facts and circumstances of the incident, then, in his opinion, appellant did know what he was doing and was responsible for his actions.
On the conflicting evidence, whether or not appellant was sane at the time of the incident, whether or not he realized his actions and knew right from wrong, were for the jury to determine. Herron v. State, 287 So.2d 759 (Miss. 1974); Shannon v. State, 321 So.2d 1 (Miss. 1975).
In Smith v. State, 245 So.2d 583 (Miss. 1971), the Court said:
"Appellant's contention that the evidence was insufficient to support the verdict has been made and has been rejected by this Court on each of the two former appeals. The thrust of appellant's argument on this point is that the jury was bound to accept the expert opinions of the two psychiatrists who testified for him upon the issue of insanity. The opinions of these experts were, of course, competent and relevant to the issue. However, uncontradicted evidence before the jury acquainted the jurors with the conduct of the appellant before, at the time of, and subsequent to the homicide. In the context of appellant's relationship with the woman he killed, and in the light of evidence of his having been cast off by her in favor of another man, the evidence was more than ample to support a finding by the jury that appellant's act was motivated by jealousy and affronted vanity. These have been classic motives for murder since the dawn of recorded history and bring the case within a well known pattern of human behavior. But neither has been considered as excusing or justifying homicide. Appellant's preparations for the homicide show clearly a premeditated and reasoned design. In carrying it out, particularly the bringing of the pistol into the restaurant concealed in the bag after waiting for the restaurant to clear, his remarks and conduct before and at the time of the shooting, reflect an understanding of the wrongful or illegal character of his act. This is strongly supported by the fact that he subsequently sought out the officers and surrendered himself to them. His emotional state and expressions of remorse also support the view that he knew the nature and consequences of his act and knew that it was wrong. It was the prerogative of the jury, and it was its duty, to consider all of this evidence. The jury was not deprived of the right to use common sense or of applying the lessons of human experience in resolving the question of whether the appellant had or had not appreciated the nature and consequences of his act and had or had not known that it was wrong. The expert opinions of the psychiatrists were not conclusive upon that issue." 245 So.2d at 585.
Assigned Errors I and II are without merit.

III.-IV.
Appellant contends that (1) the trial court erred in refusing to grant a new trial on the ground that the evidence did not show defendant forcibly raped the prosecutrix without her consent and that (2) the trial court erred in failing to grant appellant's requested Instruction No. 8.
The prosecutrix testified that appellant abducted her from the store building and committed the crime against her by placing her in fear for her safety (knife against her neck). In Fields v. State, 293 So.2d 430 (Miss. 1974), this Court held that physical resistance on the part of the victim is not necessary where the proof shows beyond reasonable doubt that she surrendered because of fear arising from a reasonable apprehension of great bodily harm. See also Rush v. State, 301 So.2d 297 (Miss. 1974). The testimony of the prosecutrix about the use of a deadly weapon against her and fear for her safety is undisputed.
The requested Instruction No. 8, refused by the court, stated to the jury that, if it believe the prosecutrix consented to sexual intercourse with appellant and that she was not forced into the act, then appellant should be acquitted. There was no *678 evidence to support the instruction, and the court properly refused same. Consequently, there is no merit in assigned Errors III and IV.

V.
The appellant next contends that the trial court erred in refusing to grant a new trial on the ground that the State failed to prove venue.
The prosecutrix was asked the following questions:
"Q. What county did this happen in?
A. Leflore.
Q. What state?
A. Mississippi."
On cross-examination, the prosecutrix steadfastly testified that the crime occurred in Leflore County, that the scene of the crime was approximately six (6) miles from Greenwood and that she could see the lights of Greenwood. The proof was sufficient to establish venue under the holdings of Turner v. State, 220 So.2d 295 (Miss. 1969) and Presley v. State, 217 Miss. 112, 63 So.2d 551 (1953).

VI.
Appellant contends that the trial court erred in permitting the prosecution to propound a hypothetical question to Dr. Andy.
The hypothetical question asked Dr. Andy related to the statements made by appellant to Dr. Bell. Dr. Andy answered to the effect that, if appellant recalled the facts which Dr. Bell testified appellant told him, then, in Dr. Andy's opinion, appellant was not having a seizure at the time of the act. The question was proper. Further, no specific objection was stated by appellant at the time the question was asked and any objection was thereby waived. Norman v. State, 302 So.2d 254 (Miss. 1974); Stringer v. State, 279 So.2d 156 (Miss. 1973).

VII.-VIII.
Appellant contends that (1) the trial court erred in not permitting the defense to question Mrs. Knight concerning appellant's ability to recall his actions on the night of the alleged crime, and (2) the trial court erred in not permitting Officer Stevens to testify to the conduct of an accused rapist.
The court informed Mrs. Knight (mother of appellant) that she could testify to what she observed appellant do and whether she thought it was usual or unusual. She was not asked the question of whether appellant could recall events surrounding the abduction and rape of the prosecutrix. Appellant did not state into the record what he expected to prove by Mrs. Knight, nor was a proffer of her testimony made. Thus, this assignment is without merit. Brown v. State, 338 So.2d 1008 (Miss. 1976).
Officer Stevens was called by appellant as an expert in normal and abnormal conduct of rapists generally. The court refused to permit him to testify as such. This was not an abuse of discretion, and no error was committed in declining to accept Stevens as an expert in that field. Grinnell v. State, supra.

IX.
The appellant lastly contends that the trial court erred in granting the State's instructions.
Appellant argues that the State's instructions were not furnished his counsel twenty-four (24) hours in advance of trial as required by Rule 14, Uniform Rules of the Circuit Courts of Mississippi. However, the State submitted the exact instructions used on the first trial, and appellant's counsel was informed by the District Attorney on the first day of the trial that the State would use those instructions. There is no merit in this assignment. Newell v. State, 308 So.2d 68 (Miss. 1975).
There being no reversible errors in the trial of the case, the judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.