405 So.2d 910 (1981)
Bennie J. COLE
v.
STATE of Mississippi.
No. 52906.
Supreme Court of Mississippi.
November 11, 1981.
*911 J. Kennedy Turner III, Philadelphia, for appellant.
Bill Allain, Atty. Gen. by Mark A. Chinn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and HAWKINS, JJ.
SUGG, Justice, for the Court:
Bennie James Cole was indicted and tried in the Circuit Court of Neshoba County for the crime of murder, but was convicted of the lesser included crime of manslaughter. The court sentenced him to serve twenty years in the custody of the Mississippi Department of Corrections. We affirm.
On August 4, 1980, Patricia Cole died from five .22 caliber gunshot wounds fired from a rifle, and inflicted by the defendant who was her brother-in-law. Two witnesses actually saw him shoot and kill the victim. Following the shooting, a third witness heard him state that he had killed his sister-in-law, Patricia Cole.
The majority of the trial, and the facts presented, revolved around whether the defendant possessed the necessary mental capacity to determine right from wrong, and the nature and quality of his acts at the time of the homicide. The defendant testified that he remembered nothing about the incident. He also complained of frequent headaches and blackouts during which he remembers little or nothing. Furthermore, one of these headaches was induced shortly before the incident in question by a conversation with his sister-in-law, Cynthie Cole. His ex-wife testified that when he had these headaches he did not understand what he was doing. His mother also testified that he had frequent headaches, and that he had no memory of his actions following these headaches.
The state also presented evidence on the issue of the defendant's insanity. Bobbie Coleman, who had been with the victim and the defendant shortly before he chased his sister-in-law out of the house and shot her, stated that defendant was acting normally and doing nothing unusual. Dr. Robert McKinley, a staff psychiatrist at Whitfield, testified that, in his opinion, the defendant knew right from wrong and could appreciate the nature and quality of his act at at the time of the homicide. Dr. William Dudley, a practicing psychiatrist, also testified and stated that the defendant was capable of assisting in his defense.
On motion of defendant, the trial judge reduced the charge from murder to manslaughter.
One of the assignments of error is that the trial court should have granted a continuance. The Public Defender of Neshoba County was appointed to represent defendant on Wednesday, September 17, 1980, and the trial was held the following Wednesday, September 24. Defendant filed a motion for continuance on September 18 and alleged that his attorney did not have sufficient time to prepare for trial; that his attorney's presence was required in court on other cases in which he had been appointed, and that it would be necessary to file several motions and interview many witnesses in this case. Defendant's attorney filed a motion for special venire, a motion to quash the indictment, a motion for discovery and inspection, and a motion for mental examination on September 19, and filed a motion for a psychological and physical examination on September 22. The twelve-day September, 1980 term opened on September 15. The homicide was committed on August 4 and defendant was indicted and arraigned on September 17.
The motion for continuance was overruled on September 23 and the order recited that the court heard evidence on the motion, but the evidence is not included in the transcript.
In Barnes v. State, 249 So.2d 383 (Miss. 1971), the Court noted the difference between a motion for continuance based on the lack of reasonable time for an attorney to prepare for trial and an application for continuance based on the ground of absent witnesses.

*912 The application for continuance upon the ground that the attorney for the defendant has not had a reasonable time to prepare for trial is different from an application for continuance on the ground that there is an absent witness. When a witness is absent the movant must continue his effort to obtain the witness after having filed the motion required by Section 1520 Mississippi Code 1942 Annotated (1956). See: King v. State, 251 Miss. 161, 168 So.2d 637 (1964). On the other hand, a motion for continuance upon the ground that an attorney has not had sufficient time to prepare for trial is subject to proof and also as to facts as they may appear from that which is known to the trial court. (249 So.2d at 384)
In Jackson v. State, 254 So.2d 876 (Miss. 1971) we noted that a trial judge has broad discretion in granting and refusing continuances, and stated:
As the trial court has broad discretion as to whether or not a continuance should be granted in the trial of a case, and, unless this Court can say from facts shown in the trial that the trial court abused its discretion, or that an injustice has been done, the Supreme Court of Mississippi will not disturb the holding of the trial court denying such a motion. Boydstun v. Perry, 249 So.2d 661 (Miss. 1971); Barnes v. State, 249 So.2d 383 (Miss. 1971); Cummings v. State, 219 So.2d 673 (Miss. 1969); Bennett v. State, 197 So.2d 886 (Miss. 1967). (254 So.2d at 878)
Applying the rule stated above, we cannot say the trial judge abused his discretion in refusing a continuance in this case.
Appellant also alleges that the psychological, mental, and physical examinations given him pursuant to court order were improperly conducted as his mental capacity at the time of the offense was not ascertained. In complying with section 99-13-11 Mississippi Code Annotated (1972), the trial judge ordered that the tests should determine whether "The defendant was mentally competent to stand trial for the crime, to cooperate with his counsel, and that he knew the difference between right and wrong at the time of the commission of the crime." Dr. Robert McKinley, a staff psychiatrist for the Mississippi State Hospital, had previously examined the defendant on August 26, 1980. Dr. McKinley testified that, in his opinion, the defendant knew the difference between right and wrong on August 4, 1980. Another psychiatrist, Dr. William Dudley, who examined the defendant on September 22, 1980, testified that the defendant was capable of assisting in his defense.
At trial, defense counsel elicited testimony from Dr. Robert McKinley that he could not say beyond a reasonable doubt that the defendant knew right from wrong at the time the offense occurred. Based upon this statement the appellant moved for a directed verdict on the issue of insanity. The motion was denied by the trial judge and is now assigned as error.
In overruling the motion for directed verdict, the trial judge stated:
On the question of insanity, a doctor who testifies as to his opinion, and he is not required to give his opinion on a finding beyond reasonable doubt. That rule only applies to the burden of the State to prove material elements of a crime beyond every reasonable doubt. In doing so, the jury would be entitled to consider all of the testimony of those who testify, with reasonable inferences flowing from their testimony, and in addition, they have the right to observe the demeanor of those witnesses, and particularly, of the Defendant, if he chooses to testify. So that part of the Defendant's motion will be overruled.
The trial judge correctly stated the rule with reference to the testimony of an expert and the burden of proof and properly refused to grant the motion for a directed verdict.
Alternatively, the defendant contends the verdict of the jury is against the overwhelming weight of the evidence on the question of whether defendant was capable *913 of knowing the difference between right and wrong at the time of the homicide. Both Cole and the state presented evidence as to the defendant's ability to discern right from wrong at the time the offense was committed.
We have repeatedly held that it is the function of the jury to make the final determination on the issue of a defendant's sanity. Such determination is the purpose for which juries exist. Annaratone v. State, 399 So.2d 825 (Miss. 1981); King v. State, 374 So.2d 808 (Miss. 1979); Lias v. State, 362 So.2d 198 (Miss. 1978); Knight v. State, 360 So.2d 674 (Miss. 1978); Hollins v. State, 340 So.2d 438 (Miss. 1976).
The verdict of the jury was not against the overwhelming weight of the evidence.
Appellant contends the trial court erred by overruling his motion for a directed verdict, and granting the state's manslaughter instruction because the element of a killing in the heat of passion was not proved beyond a reasonable doubt.
The evidence was sufficient to sustain a verdict of murder. Therefore, appellant may not complain of the state's manslaughter instruction. As stated in Huston v. State, 105 Miss. 413, 419, 62 So. 421, 422 (1931),
Technically the contention of defendant may be flawless; but practically we think it is without substance or merit ... Upon an indictment charging murder, the person charged may be legally convicted of manslaughter, provided there is evidence justifying the belief that the defendant is guilty of the lesser crime. This is admitted; but it is contended that there was no evidence even tending to prove manslaughter. The reply is that there was abundant evidence to prove murder ... and we are unable to see how he can complain of the instruction on manslaughter, or of the verdict of the jury.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.