498 P.2d 465

The STATE of Arizona, Appellee,

v.

Sidney Neil GERING, Appellant.

No. 2326.

Supreme Court of Arizona,
In Banc.

June 29, 1972.

Gary K. Nelson, Atty. Gen., by Mary Z. Chandler, Asst. Atty. Gen., Phoenix, for appellee.

Wood, Platt & Jenson, by Dennis D. Jenson, Collidge, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of second degree murder, §§ 13–451, 452 and 453 A.R.S.

We are called upon to answer two questions on appeal:

1. Was it error for the trial court to fail to hold a hearing outside of the presence of the jury to determine if the in-court identification of the defendant was tainted by an out-of-court identification three to four hours after the alleged shooting?

2. Was it error to find the defendant guilty of second degree murder in light of the testimony concerning the defendant's intoxication at the time of the crime?

The facts necessary for a determination of the matter on appeal are as follows. Defendant entered the Five Grand Bar in Mohave County, Arizona, between 11:00 and 11:30 p. m. on the evening of 27 September 1970. He sat at the bar by himself for a period of time drinking beer. Shortly after midnight, he started a conversation with the decedent whom he had apparently never seen before. Defendant ordered two beers, one for himself and one for the decedent. About 12:50 a. m., the witnesses testified they heard a noise that sounded like a "bang" and saw the defendant standing over the decedent with a gun in his hand. At this point the defendant alleged-

ly said, "Put the bottle back or I will shoot you again." Defendant, after scuffling briefly with a patron in the bar, ran from the premises.

Shortly thereafter, the decedent fell off the bar stool upon which he had been sitting and was later pronounced dead as a result of the bullet which had pierced his lungs.

About three hours later, the deputies who were investigating the homicide observed the defendant across the street and they approached him. The officers testified that the defendant appeared confused but was cooperative. Defendant told the officers that he had been out in the desert about two miles away and that he thought he had been rolled. Defendant was taken back to the bar and two witnesses, the barmaid and a patron, were called who immediately identified the defendant as the person who had shot the decedent. He was arrested and a preliminary hearing was held on 6 October, 30 October and 16 November. A mental examination was held pursuant to Rule 250, Rules of Criminal Procedure, 17 A.R.S. The trial court found that the defendant was competent to stand trial and his trial was held in late February of 1971.

At the trial, the Deputy Sheriff testified that both the barmaid and the patron had identified the defendant in the early hours of the morning after the shooting. Both the barmaid and the patron testified in open court that they had made that identification, and they further identified the defendant in court as being the one who shot the decedent. All of this evidence was admitted without objection by defense counsel:

"Q And at that time you asked for Mr. Keefer to come over to identify him?

"A Yes.

"Q And exactly what occurred?

"A Mr. Keefer come to the corner of the 5–Grand Bar which would [be] 5th Street and Main Street. He walked directly across the street to our area. He walked around Mr. Gering a couple of times. I was standing by my patrol car which is right there in the area close, I would say within 5 feet of the two cars.

"Q Where was Mr. Gering standing?

"A Mr. Gering was standing right there with Detective Spear.

"Q And were there any other suspects there?

"A No other suspects.

\* \* \* \* \* \*

"A \* \* \* then Mr. Keefer walked over to me and says, 'he doesn't have his glasses on but that's the man.' He then started to ask Mr. Gering something and I told Mr. Keefer not to."

And:

"Q All right, sir, go ahead. You informed Mrs. Edwards you had a suspect sitting in your car?

"A Yes, sir.

"Q You went to the car?

"A I got out of the car as Mrs. Edwards walked up to me. I had a tape recorder with me at the time. I turned the tape recorder on, informed Mrs.—Mrs. Edwards that I had a suspect I'd like her to look at. I asked Detective Spear to bring him out of the car which at the time he did and Mrs. Edwards said, 'that's the man'."

## ERROR IN WITNESSES' IDENTIFICATION

During the trial, the attorney for the defendant did not object to testimony concerning the out-of-court or the in-court identification. After the State had presented its case, the defense counsel moved to strike the testimony of the barmaid and the patron, and asked the court to hold a hearing to determine if the out-of-court identification was unduly sugges-

tive. The County Attorney objected to this as not timely. The court agreed:

"* * * I further find that the identification of the witnesses in this matter was shown to have been by something other than the show-up; and further, that the show-up in and of itself was not utterly suggestive."

■ A counselless pre-complaint or pre-indictment (out-of-court) identification, if not unduly suggestive or otherwise tainted, is permissible under the decisions both of the United States Supreme Court, Kirby v. Illinois, 405 U.S. 951, 92 S.Ct. 1877, 32 L.Ed.2d 411, 1972, and of this court, State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969).

■■ The defendant through his attorney, having failed to object to the in-court and out-of-court identifications at the time they were offered and admitted, cannot (absent fundamental error) later ask the court to hold a hearing on their admissibility:

"* * * if the in-court identification is not challenged at the trial level, it will be presumed thereafter that prior identification procedures did not taint the in-court identification. This presumption we deem conclusive for the obvious "reason that all litigation, even criminal, must end at some point. Matters which could have been determined by the mere asking, if not raised, will be deemed settled adversely to the accused." State v.

Dessureault, supra, 104 Ariz. at 384, 453 P.2d at 955.

## DID THE INTOXICATION NEGATE THE VERDICT OF SECOND DEGREE MURDER?

■ The defendant contends that it was error for the jury to find him guilty of murder in the second degree in light of the testimony concerning his state of intoxication at the time the crime was committed. Defendant in his brief states:

"In light of the above testimony it is inconceivable that the jury could determine that Appellant had the presence of mind to entertain the necessary malice to constitute the crime of murder and in light of the other testimony during the trial as to the events immediately preceding the shooting there is no evidence of malice."

The jury was properly instructed as to the effect of intoxication upon purpose, motive, and intent as well as the lesser offense of manslaughter. Viewing the evidence in the light most favorable to upholding the verdict, State v. Dutton, 106 Ariz. 463, 478 P.2d 87 (1970), we believe there was ample evidence to support, not only the instructions given, but the verdict found by the jury of second degree murder.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD, and HOLOHAN, JJ., concur.