541 P.2d 554

**The STATE of Arizona, Appellee,**

v.

**Paris H. CARRIGER, Appellant.**

No. 3248.

Supreme Court of Arizona,
In Banc.

Oct. 22, 1975.

—————◆—————

Bruce E. Babbitt, Atty. Gen., Phoenix by William J. Schafer, III, and Grove M. Callison, Asst. Attys. Gen., and Raymond Aaron Kizer, Third Year Law Student, for appellee.

Kelsall & Phelps by Jack L. Phelps, Phoenix, for appellant.

CAMERON, Chief Justice.

This is a delayed appeal by Paris Hoyt Carriger from a jury verdict and judgment of guilt to the crime of grand theft auto, A.R.S. §§ 13–661, 671 and 663, as amended 1963, with a sentence of not less than 10 years nor more than 12 years.

Although Carriger raises questions on appeal concerning the pretrial identification of the defendant, we believe this case is resolved by answering only one question: Did appellant's failure to object to his in-court identification preclude him from raising these issues on appeal?

The facts necessary for a determination of this matter on appeal are as follows. On 7 April 1967, Jerry Ransdell's light green 1961 Ford, license plate number HFZ–851, was stolen from the student parking lot at Cortez High School in Phoenix, Arizona. At approximately 8:30 on 7 April the defendant parked the stolen car on West Belmont in Phoenix and knocked on the front door of the Soto house. Johnny Soto, a boy of twelve, answered the door. Carriger asked Johnny if he knew where the McCalls lived. Johnny answered no and asked him why he was looking for them. Carriger responded that he was looking for his girl. This conversation lasted about ten seconds and then Carriger drove away.

Carriger had driven the car about half a block from the Soto house, when Clem Soto, Johnny's father, approached the house in his car. Mr. Soto observed that the car leaving his home was a light colored 1961 Ford. Mr. Soto went in his house and asked Johnny, "Who was that?" Mr. Soto then got in his car and drove down the street. After observing the Ford about eight houses down the road and noting that the license plate number was HFZ–851, Mr. Soto returned to his home and called the police.

At about 9:00 that evening police officer William Sanders observed the stolen Ford going east on Gendale Avenue. Officer Sanders stopped the Ford, but as he approached the car it drove rapidly back out onto 27th Avenue. The Ford, which was being driven at a high rate of speed, veered across the center line and collided

with a car that was pulling away from the curb at 27th Avenue and El Caminito. The driver of the Ford fled on foot. An envelope with the name "P. Carriger" was discovered during a search of the Ford.

On 8 April 1967 a policeman came to the Soto house and showed Johnny a photograph of Carriger which Johnny identified. Johnny later also identified the defendant during a lineup which was conducted within a few weeks after Carriger's visit to the Soto home on the evening of 7 April 1967. There were five people in the lineup who were all dressed alike and there is nothing in the transcript to indicate that their physical characteristics would cause the appellant to stand out from the others. However, immediately before the lineup, Johnny was shown one photograph, a picture of appellant. After viewing the lineup, Johnny identified Carriger as the man he had seen at his home.

On 12 April 1967 a criminal complaint was sworn to charging appellant with grand theft, auto.

At the trial Johnny Soto, on direct examination, identified the defendant as follows:

"Q   John, do you recognize anybody in this courtroom today?

"A   Yes.

"Q   Who would that be, John?

"A   The guy who is sitting over there (indicating).

"Q   Which guy is that, would you please describe him and tell me what he is wearing?

"A   He is wearing a black shirt.

"Q   Is he sitting next to this handsome gentleman here in the sport jacket?

"A   Yes.

"Q   Do you know that man's name?

"A   No.

"Q   Have you ever seen that man before that you just pointed out?

"A   Yes.

"Q   Going back to April 7, 1967, out by your home, did you see that man?

"A   Yes.

        *        *        *        *        *        *

"Q   Now, when this man talked to you, was this the defendant here who had the conversation with you?

"A   What do you mean?

"Q   Is this the man that talked with you on April 7, 1967?

"A   Yes.

"Q   About what time was this, John?

"A   Around 9:00 o'clock, or 8:30.

"Q   In the evening?

"A   In the night.

"Q   It was after dinnertime?

"A   Yes."

Defendant did not object to the identification but on cross-examination brought out the fact that the witness had been shown a picture of defendant before the lineup and that he was shown one picture when he made the initial identification:

"Q   When he [the policeman] came out to your house, how many pictures did he bring you?

"A   One.

"Q   Just one to look at?

"A   Yes.

"Q   And did he tell you, 'This is the guy'?

"A   No—yeah, he told me is this the guy that I seen, and I said yes."

On re-direct examination, the following was asked without objection:

"Q   John, the man that you spoke to on April 7, 1967, do you see him here today?

"A   Yes.

"Q   Which man is that, John?

"A   The one sitting over there (indicating).

"Q   Are you sure of that, John?

"A   Yes."

There was no motion to suppress nor did defense counsel raise any objections at

the trial concerning Johnny's in-court identification of defendant.

Appellant now argues on appeal, for the first time, that the photographic lineup identifications were unduly suggestive and, in effect, tainted the in-court identification of the defendant. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

It should be noted that *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which was decided 12 June 1967, is not retroactive, *Stovall v. Denno*, supra, and does not apply to pretrial identification which occurred prior to that date. The pretrial identification herein occurred in April of 1967.

Although we do not approve of the pretrial identification procedures displayed herein, we do not need to disturb the judgment. We have held on several occasions that we will presume that a prior identification did not taint the in-court identification where the in-court identification was not challenged at the trial level:

> "* * * if the in-court identification is not challenged at the trial level, it will be presumed thereafter that prior identification procedures did not taint the in-court identification. This presumption we deem conclusive for the reason that all litigation, even criminal, must end at some point. Matters which could have been determined by the mere asking, if not raised, will be deemed settled adversely to the accused." *State v. Dessureault*, 104 Ariz. 380, 384, 454 P.2d 981, 985 (1969). See also *State v. Collins*, 104 Ariz. 449, 454 P.2d 991 (1969); *State v. Gering*, 108 Ariz. 377, 498 P.2d 465 (1972).

We find no error.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ, concur.

HAYS, J., did not participate in the determination of this matter.