**Arlene K. SMITH, also known as Arlene Johnson, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

No. 4785.

Supreme Court of Wyoming.

Feb. 23, 1978.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and John R. Green, Senior Law Student and Student Director, Wyoming Defender Aid Program, Laramie, for appellant (defendant below).

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Asst. Atty. Gen., Cheyenne, for appellee (plaintiff below).

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

The defendant was convicted, following a jury trial, of first-degree murder in violation of § 6–54(a), W.S.1957, 1975 Cum. Supp., and was sentenced to life imprisonment. On appeal, essentially two issues are raised: (1) whether the trial court properly denied defendant's motion to strike certain pretrial and in-court identifications of the murder victim and the defendant; and (2) whether there was sufficient evidence that the crime was committed in Sweetwater County, Wyoming. We answer both questions in the affirmative and will affirm the conviction.

Early in the morning of May 23, 1976, the body of a man was found near Point of Rocks, in Sweetwater County, Wyoming. He had died of bullet wounds, having been shot five times, and a check of fingerprints disclosed that the body was that of one Thomas Burgett from Des Moines, Iowa. Inquiry revealed that Burgett had left Iowa, in the company of the defendant, on May 10, and that they had traveled to California to visit Burgett's aunt and to seek employment. While in California, Burgett's relatives observed a .38 caliber Smith and Wesson revolver in the defendant's possession. The couple left California on May 20, and the defendant arrived in Des Moines alone on May 23.

At trial, the prosecution called Linda Pedri and Berry Malone to testify concerning their observations on the night of May 22, 1976. Pedri was the cocktail waitress and Malone the bartender for Giuseppo's Bar in Rock Springs. Both witnesses testified without objection that the defendant and Burgett had been in Giuseppo's between the hours of 9 p. m. and 1 a. m. on the evening of May 22. Their attention had been drawn to Burgett because of tatoos on each of his fingers. Pedri testified—again without objection—that she had attended the defendant's preliminary hearing out of curiosity, and had thereafter identified photographs of the deceased as resembling the man who had been in Giuseppo's the night of May 22. Malone also testified without objection that he had identified photographs of the de-ceased prior to trial and that they were of the man he had seen in the bar.

During cross-examination of Malone, Malone testified that he had identified the defendant, during a one-person showup prior to trial, as being the woman who had accompanied the deceased into the bar. Further cross-examination of Malone also disclosed that he had been shown pictures only of the deceased. These witnesses were extensively cross-examined relative to their observations on May 22 and during the police investigation. After another witness had testified, and just prior to commencement of the second day of trial, defendant moved to strike all of the above-mentioned identification testimony and requested an instruction to the jury to disregard all such testimony. The motion was taken under advisement. After the prosecution rested, the trial court granted the defendant's motion as it related to Malone's testimony about his showup-identification of the defendant and the jury was instructed to disregard this testimony. The defendant's motion was denied as to all other identification testimony.

Defendant contends that this identification procedure and testimony—including procedures used by law-enforcement officers, such as a display of photographs of only the deceased, use of a one-person showup, and the voluntary attendance of a witness at defendant's preliminary hearing—combined to be so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. The state contends that defendant's motion was untimely and that, in any event, the identification testimony was proper.

■ Where a defendant wishes to preclude the use of evidence obtained through an alleged violation of his constitutional rights, he must protect himself by timely action. *Blakely v. State*, Wyo., 542 P.2d 857, 860. In the absence of circumstances that preclude the lodging of timely objection, a motion to strike identification testimony is not subject to review when such

testimony is given without objection and is subjected to vigorous cross-examination. *Emerson v. State,* 261 Ind. 436, 305 N.E.2d 435; *Johnson v. State,* 257 Ind. 682, 278 N.E.2d 577; *State v. Montgomery,* 291 N.C. 91, 229 S.E.2d 572; *State v. Canada,* Iowa, 212 N.W.2d 430; and *State v. Gering,* 108 Ariz. 377, 498 P.2d 465. The court said, in *Johnson v. State,* supra:

" . . . Better practice dictates that the questions be presented and determined at a pre-trial hearing upon a motion to suppress. Absent prior knowledge of an out-of-court identification, the matter could be gone into by preliminary questioning, out of the presence of the jury, at the time the in-court identification testimony is tendered. The question not having arisen by either of the foregoing methods, the defendant, at best, runs the risk of having the trier of the facts subjected to questionable testimony unnecessarily and a subsequent determination of whether it was error or prejudicial. The disadvantages inherent in awaiting the cross examination stages to raise the question are self evident. . . ." 278 N.E.2d at 580.

We find, in this case, that under these concepts the defendant waived his rights to successfully urge error on the issue of incorrect identification.

■ Furthermore, it is evident that the trial court found no denial of defendant's constitutional rights, since certain of the identifications were only that the deceased had been in Giuseppo's on a certain date and since the identifications of the defendant resulted from the witnesses' own surmises. We note that the United States Supreme Court cases in this area are concerned primarily with pretrial identifications *of the defendant* in the absence of his counsel, or under suggestive circumstances amounting to a denial of due process. See, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Gilbert v. State of California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; *Stovall v. Denno,* 388 U.S.

293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. We fail to see how the principles announced in those cases touch and concern an identification of a murder victim. Pedri's out-of-court identification testimony that she had seen the defendant at a preliminary hearing, and that the person she saw was the same individual entering Giuseppo's on May 22 with the deceased does not, of course, condemn the police for *their* conduct. See, *Fresquez v. State,* Wyo., 492 P.2d 197, 201. As a result, it would appear that the failure to strike Malone's in-court identification of the defendant was, if error at all, harmless.

■ Defendant's second contention— relative to the sufficiency of venue evidence—depends to a great extent on the exclusion of the identification testimony in question. There was, in our opinion, sufficient circumstantial evidence to raise a reasonable inference that the murder was committed in Sweetwater County. The finding of a dead body in a particular county raises a presumption, or supports an inference, that the killing took place there. *State v. Fabian,* Miss., 263 So.2d 773, 775–777; *State v. Dean,* 90 Ohio App. 398, 106 N.E.2d 303; *Commonwealth v. Knowlton,* 265 Mass. 382, 163 N.E. 251; and 22 C.J.S. Criminal Law § 185(17). Venue can be proved either by direct or circumstantial evidence. *State v. Fabian,* supra. We so held in *McFetridge v. State,* 32 Wyo. 185, 231 P. 405, 234 P. 505, 512 (on denial of rehearing), where we said:

"The principle, however, seems to be well established that direct evidence is not necessary to prove venue, but that, like any other fact, it may be established by proof of facts and circumstances from which it may reasonably be inferred. 16 C.J. § 1573, pp. 768, 769; 1 Wharton, Crim.Ev. (10th Ed.) § 108. . . ."

See, also, *State v. Parker,* 44 Wyo. 488, 13 P.2d 641. If evidence is offered to rebut

the presumption that the killing occurred where the body was found, the question of venue is a matter for the jury. *State v. Fabian*, supra. Aside from the location of the body, there is other circumstantial evidence to support the jury's finding in this case: Witnesses observed the defendant and the deceased in Rock Springs the evening before discovery of the body; a resident of Point of Rocks heard sounds louder than firecrackers sometime prior to 1:30 a. m. the same evening; and the defendant admitted being in Wyoming at or about the time of the killing. Defendant's contention is, therefore, without merit.

Affirmed.